## COLUMBUS (city) v BROWN

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3130. Decided Feb. 26, 1940.

John L. Davies, City Attorney, Columbus, and Richard W. Gordon, Asst. City Attorney, Columbus, for plaintiff-appellee.

Russ E. Bothwell, Columbus, for defendant-appellant.

**OPINION**

By GEIGER, J.

This matter is before this Court on appeal on questions of law from a judgment of the Municipal Court of the City of Columbus finding the defendant guilty of a traffic violation and imposing upon him a sentence of $25.00 and seven days in jail.

The affidavit is to the effect that William Brown, on the 7th day of November, 1939, at the City of Columbus, County of Franklin, State of Ohio, "did then and there being, unlawfully, recklessly and carelessly operate a certain motor vehicle, to-wit, an automobile, upon Oakwood Avenue in said city and did then and there operate said motor vehicle in such a manner as to endanger lives and limbs of persons using said street, to-wit, * * * contrary", etc. The affidavit sets out no other details of the alleged offense.

Notice of appeal was given, and the bill of exceptions filed, to which there is attached a memorandum to the effect that counsel agree that there be incorporated in the bill a true and correct copy of the two sections of the traffic code which are in question. In spite of this agreement we find no such copies incorporated in or attached to the bill of exceptions.

A reviewing Court may take judicial notice of a city ordinance. Orose v Hodge, 132 Oh St 697, 2nd syllabus. Dayton v DeBrosse, Montgomery County Court of Appeals, 62 Oh Ap 232. After diligent search we have been able to find a copy of the traffic ordinances.

Section 1301 under the heading "Reckless Driving", provides that any person who drives any vehicle upon a highway carelessly and heedlessly, in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving, and upon conviction shall be imprisoned in the City Prison for a period not less than five nor more than ninety days, or by a fine of not less than $25.00 nor more than $500.00.

Section 1302 relates to the restrictions as to speed. This latter section was amended as of January 17, 1938, and seems to be patterned after §12603 GC.

It provides in substance that no person shall operate a motor vehicle at a speed greater or less than is reasonable or proper having due regard to traffic, etc. The speed provided is twenty miles per hour in passing a school building or in closely built-up portions of the city; twenty-five miles in other portions of the city except on state routes; thirty-five miles on state or main thoroughfares within the city.

It is provided that it shall be **prima**

facie unlawful for any person to exceed any of the foregoing speed limitations.

Following the general provisions of §12603, new matter is incorporated in an amendment to the ordinance to the effect (g) in every charge of violation of the section the affidavit shall specify the speed at which the defendant is alleged to have driven, also the speed, if any, which this section declares shall be prima facie lawful. There is also included in the amendment, sub-section (j), which provides that whoever operates a motor vehicle without due regard for the safety and rights of pedestrians * * * and so as to endanger the life, limb or property of any person while in the lawful use of the roads, shall be deemed guilty, etc.

Sub-section (j) of the ordinance seems to follow the provisions of §12603 GC, under the caption, "Safety".

It is rather difficult to determine whether the affidavit was filed under the provisions of Sec. 1301 of the old ordinance or 1302 (j) of the amended ordinance.

The accident that gave rise to the prosecution occurred at the intersection of Oakwood, a north and south street, and Thurman Avenue, an east and west street. Section 1309 of the ordinance provides that when two vehicles enter an intersection at the same time the driver of the vehicle on the left shall yield to the driver on the right.

Another section of the ordinance claimed to be involved is Section 1315 under the caption, "Duty to Report Accidents", and provides in substance that the driver of any vehicle involved in an accident shall, within twenty-four hours, make a written report of such accident to the police headquarters in Columbus. All accident reports made under this section shall be without prejudice and shall be for the information of the police department only, for statistical purposes. The fact that any person has made a written report of an accident shall be admissible in evidence solely to prove compliance with this section, but no such report or any part thereof or statement contained therein shall be admissible in evidence for any other purpose in any trial arising out of the accident.

A truck was being driven northward by the defendant and it collided with a Chevrolet car being driven eastward by a Mr. Jenkins. Jenkins was injured and taken to the hospital and did not appear as a witness in the case. There were three witnesses, Harry Petty and two police officers. Petty saw the accident at a distance of about one square, and states that he did not have an opportunity to judge the speed of either machine. The two officers testified that they arrived on a call about ten minutes after the accident and found the truck at the east curb line of Oakwood about 54 feet north of the point of impact. The Chevrolet car had been moved, but they detected the point at which it struck the curb 34 feet from the point of impact. Photographs were taken of the truck and the damaged car, which are in evidence. The officers testified that skid marks indicated that the truck had been astride the center line of the street at the time of the collision.

F. I. Williams, one of the officers, testified that he had a conversation at the scene of the accident, with the defendant, who told him that he was driving north on Oakwood and did not see the car coming until it was almost at the intersection. The defendant was asked how fast he was driving and stated thirty to thirty-five miles an hour. The officer was asked on cross-examination:

"Q. You are testifying from a written report, at that time, aren't you, Officer?

A. Along with my knowledge of what took place at the scene of the accident.

Q. And you know what took place out there from what others told you— from the parties, perhaps?

A. That is right, from what others told me.

Q. From what this defendant told you?

A. That is right."

The officer stated that he was using

the written form which he made up at the time, to refresh his memory.

Being asked whether he was familiar with the provisions of Section 1315 of the ordinance, the officer stated that he was, but that all the conversation was not on the report. The officer stated that the report is a police department headquarters report and lists the cause of the accident as excessive speed, the information as to this being obtained from conversation with the defendant and observation of what the officers found at the scene—partly from the report that the defendant made.

Thereupon, counsel for defendant moved that the officer's testimony be eliminated and the Court overruled said motion at the time.

On further examination the officer stated that his testimony was based upon his personal observation as well as statements made to him by the defendant, "personal observation, questions, identification marks, and the cars we found at the scene of the accident". By "personal observations" the officer meant his official observation as a police officer.

Curtis L. Nafzger, a police officer, testified substantially the same as the first officer. He stated that upon arrival at the place of the accident he asked the defendant what had happened and was told by the defendant that he was driving north on Oakwood and struck the car going east on Thurman. Being inquired of as to the report from which he testified the officer stated that it was the official report of the police department on the accident—the only public report and was an exact copy of the report filed at headquarters, with a minor exception.

The motion to strike out the testimony of the officer was renewed and was overruled, the Court stating, "I am going to overrule the motion because Section 1315 requires the defendant to make a written report within twenty-four hours after the accident. The law requires that he file this report with the police department and it must be signed by the defendant." After the ruling of the Court, counsel for defendant inquired of the officer, "You don't require

any defendant in making these reports from which the written report is made to sign such reports, do you?" to which the officer answered, "No". Further inquiry was that the written report is from information given and counsel asked, "And they comply with this section. Then they are not subject to any arrest for not reporting an accident if they give you this information? A. That is right."

The officer stated:

"I asked him how fast he was going, and he said about thirty or thirty-five miles an hour when he came to the intersection—he did not see the man directly in front of him and did not slow up before the intersection."

After the evidence was all in the defendant made a motion for dismissal which was overruled, the Court stating, "I am going to find the defendant guilty on this charge, because I think the defendant was driving at a higher rate of speed than is permitted under the city ordinance, and it appears as though the violation resulted in a very serious accident here, from the way I am able to gather the damage done to the other car. In making an opinion the Court is trying to take into consideration the seriousness of an offense and I find this one has been quite serious and I will also try to make the penalty fit the seriousness of the offense", the sentence being seven days in jail and $25.00.

The errors assigned are refusal of the Court to sustain the defendant's motion for dismissal at the close of the case; that the testimony of the police officers was inadmissible without which there is no evidence against the defendant; that the ordinance, Section 1315, is unconstitutional for the reason that it compelled the defendant to testify against himself.

It appears that there is no evidence of the speed at which the defendant was operating his truck except the statement given by the defendant to the officers, of which they made a record and from which record they testified. The Court overruled the defendant's motion in reference to the officer's tes-

timony for the reason that in his judgment the ordinance requires a written report signed by the defendant, and that there being no such report made by the defendant but the report of the officers being made from their personal investigation plus the information they received from the defendant in reference to the speed at which he was operating the truck. We are of the opinion that Section 1315 is ██ not unconstitutional, if it is safeguarded by the provision that no part of the report secured from the defendant shall be used in the trial of the criminal case. We do not agree with the Court below that to be protected by the provisions of the ordinance the report must ██ be made by the defendant in writing and by him signed. If it is the custom of the police officers to accept statements from those who are afterwards prosecuted and make a written report from such statements the same may be considered as the report required by Section 1315 with all the privileges attached thereto. There was no evidence in this case as to the speed of the truck except that elicited from the defendant and testified to by the officer from the report made. The Court having found the defendant guilty "because I think the defendant was driving at a higher rate of speed than is permitted under the city ordinance", it is evident that the Court gave major consideration to the testimony of the officer as to information gained by the officer ██ from the defendant. This we feel is prejudicial error and directly contrary to the provision of Section 1315.

There are other reasons why we think this judgment should be reversed. It is stated that the affidavit was drawn under Section 1301 covering reckless driving. That section does not require any statement as to speed, and yet the Court determined the case against the defendant solely on question of what he regarded as excessive speed. Had the charge been drawn under Section 1302 covering speed regulations, it would have been controlled by the Section as amended where it is required by subdivision (g) that in every charge of violation the affidavit shall specify the speed at which the defendant is alleged to have driven, also the speed, if any, which the section declares shall be prima facie lawful at the time and place of such alleged violation.

The affidavit was drawn under the "reckless driving" statute which has no reference to speed limits. The conviction was had because of the violation of the speed ordinance. We can not endorse a practice which ██ would permit the filing of an affidavit under the "reckless driving" ordinance, and a conviction under the speed restriction ordinance. Especially is this true when the penalty for violating the speed ordinance is a fine, both under the statute and the ordinance, and the penalty for violating the "reckless driving" ordinance is imprisonment and a fine under the ordinance, but under the statute is only a fine for the first offense. It will readily be detected that if the position taken by the Court is correct, and if the authorities wish to impose a sentence of imprisonment for what is really a violation of the speed ordinance, they could file the charge under the "reckless driving" ordinance, and punish the defendant by imprisonment where his only offense is the violation of the speed ordinance. This can not be permitted. If the speed had been disregarded by the Court there would have been no evidence upon which conviction could be had, especially in view of the fact that the driver of the automobile entered the intersection on the left of the driver of the truck and was required by Section 1309 to yield.

Counsel for the city have argued that the reckless driving ordinance is an entirely different provision from the corresponding statute, §12603-1 GC. It is worded differently, but the offense charged would fall equally within either and could also equally well be described by subdivision (j) of amended 1302.

**Schneiderman v Sesanstein, 121 Oh St 80**, holds, (1) an ordinance of a municipality, which prescribes a manner

of driving or a rate of speed of automobiles in conflict with the provision of the statute, is invalid.

To the same effect is **Schwartz v Badila, 133 Oh St 441.** See **Swoboda v Brown, 125 Oh St 512,** syllabus 5.

Our Court has had occasion to pass upon affidavits drawn under municipal speed ordinances.

In **City of Springfield v Hanlon,** decided November 24, 1939, Hornbeck PJ., (30 Abs 596) delivering the opinion of the Court, states:

"We have held times without number that §12603 GC, is not violated by proof of speed alone, although rates of speed are fixed which are prima facie lawful."

The specific question was passed on by this Court in **Smith v Kinney, 19 Abs 52,** and **Baker v Wright,** unreported, where it was held the gist of the offense defined in this statute (§12603 GC) is the driving at a rate of speed fsater or slower than is reasonable and proper. The rate of speed is but one element to be taken into consideration. See also **Vetel v Meiklejohn, 12 Abs 567.**

We wish to call attention to what we think is a lamentable situation in connection with the publicity of speed ordinances. Every one in the city of Columbus who drives a car is subject to numerous ordinances affecting driving. When the present matter came before us for determination it was necessary to secure a copy of the ordinances. The library at the Court House produced a copy of the city ordinances published in 1930, with none of the subsequent amendments. We solicited the Prosecuting Attorney of Franklin County, the City Clerk, the Legal Department of the City of Columbus, the City Attorney, the Prosecuting Attorney of the Criminal Court. The Chief of Police reported that he has one copy "nailed down". After making various searches a copy of the ordinances was finally produced by the Assistant City Attorney, apparently printed as an advertisement of a restaurant, where it is stated that one may find sea food, steaks and chicken dinners, with the admonition, "Obey All Traffic Rules and Dine and Dance". Even this culinary information had to be supplemented by loose leaf copies, apparently of the "City Bulletin".

It is said of the immutable laws of the Medes and Persians that they were posted so high that no one could read them. It occurs to us that the City of Columbus has rather closely followed the Medes and Persians in that it has made available to the people subject to the laws an incomplete Traffic Code issued by a restaurant, together with such detached amendments as may be produced after diligent search. No one is able to find out, not even the Court, what are the regulations without searching inquiry from various enforcing officers.

Judgment reversed. Entry accordingly.

HORNBECK, PJ. & BARNES, J., concur.