THE STATE OF OHIO, APPELLEE, *v.* WALL, APPELLANT.

324

*Mr. Russell Leach,* city attorney, *Mr. Bernard T. Chupka, Mr. William B. Shimp* and *Mr. William Hughes,* for appellee. *Mr. Roy W. Roof,* for appellant.

BRYANT, J.  Nicholas J. Wall of Marion, Ohio, defendant, has appealed to this court on questions of law from the verdict and judgment of the Columbus Municipal Court where, on charges filed by the state of Ohio, he was found guilty of speeding, that is, operating a motor vehicle at a rate of speed declared to be prima facie unlawful by the state motor vehicle laws.

The alleged violation occurred on state route No. 257 in Franklin County, Ohio, the arrest being made on Saturday evening, September 10, 1960, with four men, two of them members of the State Highway Patrol assisting in the preliminary plans which resulted in the arrest of Wall.

The determination of the alleged speed which Wall was traveling was made by a radar unit in one of the police motor vehicles which, a short time before, had been parked off the highway in a private driveway to a vacant house.  The other police vehicle was driven a short distance to the north of the place where the car with the radar unit was stationed.

Wall was charged with violating Section 4511.21 of the Revised Code, forbidding operation of motor vehicles at a speed greater or less than is reasonable or proper, having due regard to the traffic, the surface and width of the street or highway, defining five prima facie lawful speed limits inside municipal corporations and two prima facie lawful speed limits outside municipal corporations, the latter two applying, respectively, to driving in the daytime and at nighttime as defined in Section 4513.03 of the Revised Code, and one prima facie lawful speed limit when passing school buildings and grounds.  The affidavit in this case contains no allegation as to the time of the alleged

speeding, but from the evidence it appears to have occurred during the nighttime, which Section 4513.03, *supra* (Recodification Act of 1953), defined as that period from one hour after sunset to one hour before sunrise and other times when the natural light is insufficient.

We shall judicially notice that on Saturday, September 10, 1960, the sun set at 6:40 p. m., E. S. T. (1960 World Almanac, 420-426), and as the time of the alleged violation was about 10:30 p. m., which was more than one hour after sunset and more than one hour before sunrise, we conclude that the alleged violation occurred during the nighttime. Section 4511.21, *supra*, requires that the time of the violation shall be set forth in the affidavit, but in this case the affidavit failed to do so.

Thus, the two police vehicles were located approximately two-tenths of a mile apart along route No. 257 for some time in advance of the arrival of the 1959 Pontiac automobile driven by Wall. The two police officers were able to communicate by short wave radio, Patrolman Gerwig being in charge of the car with the radar unit, checking speed, and Patrolman Saddler being in the other car, ready to make an arrest. The record does not establish whether the lights on the two cars were extinguished or burning as they waited.

Wall, accompanied by Mrs. Wall, Mr. and Mrs. Robert McAllister and Mr. Justice Fish, traveled together in Wall's nearly new automobile. Wall, at the time, lived in Richwood, Ohio, was president of the Richwood Lumber Yard, and, with the four persons just named, drove to Columbus. While in Columbus they stopped for dinner. Between 9:00 and 9:30 p. m. they started back to Richwood in Wall's car, with the three men in the front seat and the two women in the rear.

From the testimony, it appears that route No. 257 is a four-lane highway, with a raised divider in the center separating the opposing flow of traffic. If the testimony of Wall and three of the four others in the car, who testified, is to be believed, there was an absence of traffic in either direction, that is, there were no cars in sight ahead of them and there were no cars on the other side of the highway coming toward them. The testimony of the state's witnesses was vague on the point, suggesting that sometime during the time officers were in position and waiting other traffic had been seen.

Neither the affidavit nor the testimony make it clear that the alleged violation occurred outside the limits of a municipality, hence we judicially notice that the entire length of route No. 257 in Franklin County is outside the limits of any municipal corporation. See Ohio Official Highway Map, prepared by the Ohio Department of Highways, pursuant to Section 5511.01 of the Revised Code, and the Official Franklin County Highway Map, prepared by the Franklin County Engineering Department, pursuant to Section 5541.02 of the Revised Code.

From these two maps, it appears that route No. 257 in Franklin County, also known as the Dublin-Prospect Road, runs in a generally north-south direction, from state route No. 161 on the south to (and beyond) the Delaware County line on the north, a distance of approximately three miles; that in Franklin County it follows the course of the Scioto River, being just east of the river; that no bridges cross the Scioto River north of route No. 161 to the Delaware County line, with the result, as to that part in Franklin County, that no roads cross route No. 257 and only three roads dead end into it in the entire three-mile length in Franklin County.

It appears that Patrolman Gerwig, by use of the radar unit, satisfied himself that Wall was driving at 70 miles an hour, radioed a message to Patrolman Saddler, who turned on the red flasher signal on his car and with a flashlight signalled Wall to stop. Wall was ordered out of his car; told to produce his driver's license and registration card; informed that a radar unit had established his speed at 70 miles per hour, and that he would have to answer charges in the Columbus Municipal Court; whereupon he was given a ticket for speeding.

Wall denied the speed charge, stated that he had not seen a car with a radar unit nor the warning sign required to be posted between 750 and 1,500 feet in advance of the location of the radar, electrical or other mechanical timing unit under the provisions of the traffic laws and asked where they were. He was branded as belligerent by the officer. (See Section 4511.091 of the Revised Code, requiring all officers engaged in traffic law enforcement who use radar, mechanical or electrical timing devices to determine speed of motor vehicles to give warning thereof by posting a uniform sign 750 feet to 1,500 feet in advance of such radar or other timing device, and providing that if such

sign be not posted, the officers participating in the arrest shall be incompetent to testify.)

After giving the arresting officer all requested information, Wall drove to the area where the radar unit and sign were said to be, but claims he never found the sign. The testimony of the two patrolmen as to the posting of the sign leaves much to be desired. Patrolman Gerwig, at one point in his testimony, testified:

"* * * we set our radar unit two-tenths of a mile north of Bright Road on highway 257 *at the directed speedometer control sign on Highway 257*." (Emphasis added.)

A few questions later, he testified that the distance between the radar sign and the radar unit was two-tenths of a mile, but without any statement as to whether the sign was east, west, north or south of the radar unit. To be properly located in this case, such sign would have to be south of the radar unit.

It was Patrolman Gerwig, who was in charge of the radar unit, who signed the affidavit charging Wall with speeding. This affidavit, in full, reads as follows:

"AFFIDAVIT

"The State of Ohio )
Franklin County, ) ss.   Columbus Municipal Court
City of Columbus. )

"Ptl. P. L. Gerwig being first duly cautioned and sworn, deposeth and saith that one Nicholas John Wall on or about the 10 day of Sept. A. D. 1960, in county of Franklin, and state of Ohio, did unlawfully and knowingly operate and have control of a certain motor vehicle over and upon highway 257 to wit did operate said vehicle 70 mph the lawful prima facie limit being 50 mph. Contrary to Sec. 4511.21 of the Revised Code of Ohio. contrary to statute in such cases made and provided, and against the peace and dignity of the state of Ohio, and further deponent says not.

"Sworn to and subscribed before me, this 12 day of Sept. A. D. 1960.

"Ted Hysell, Clerk Columbus Municipal Court

"By /s/ Chas. Burn, Deputy.

"Ptl. P. L. Gerwig"

As previously pointed out, the charge of speeding against Wall was based upon the provisions of Section 4511.21, *supra*, which so far as here pertinent provides in part as follows:

"No person shall operate a motor vehicle * * * in and upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions * * *.

"It shall be prima facie lawful for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following:

"* * * *

"(E) Sixty miles per hour during the daytime and fifty miles per hour during the nighttime on highways outside of municipal corporations * * *.

"As used in this section nighttime means any time when lighted lights are required by Section 4513.03 of the Revised Code. Daytime means any other time;

"* * * *

"It shall be prima facie unlawful for any person to exceed any of the speed limitations in Sections 4511.01 to 4511.78, inclusive and 4511.99 of the Revised Code. In every charge of violation of this section the affidavit and warrant shall specify the time, place, and the speed at which the defendant is alleged to have driven, and also the speed which this section declares shall be prima facie lawful at the time and place of such alleged violation."

Not set forth above are provisions found in Section 4511.21 which relate to (1) stopping within the assured clear distance, (2) prima facie speed limits effective inside the limits of municipal corporations, and (3) procedural requirements for changing the prima facie lawful speed limits, for the reason that they have no relevancy to any of the issues in this case.

Counsel for Wall filed a general demurrer to the affidavit claiming that it failed to charge any offense either under the motor vehicle or other laws of this state. This was overruled by the court.

The bill of exceptions contains testimony offered at a trial in the court below which took place on March 29, 1961, approximately 200 days after September 10, 1960, date of the alleged violation. At that trial, Wall was found guilty, fined $25 and

costs and ordered to post a bond of $75 as a condition of his right to appeal to this court.

In giving our attention to the trial of March 29, 1961, we shall pass over temporarily a number of events in this case which apparently took place during the intervening six-month period, all as disclosed by the official transcript of docket and journal entries from the court below. Included in those events referred to and described in the official transcript are: (1) An earlier trial of Wall on this particular charge on the merits, with witnesses testifying for the prosecution and the defense. at the conclusion of which Wall was found not guilty; (2) still another earlier trial of Wall on this same charge on the merits, with witnesses being called by the prosecution and the defense, at the conclusion of which Wall was found not guilty and the charge was dismissed; (3) an order by the court below setting aside the sentence previously imposed, although there had been no finding of guilty; and (4), from original papers in the file, an order signed by a judge of the court below dismissing this same charge for want of prosecution.

We have been unable to find any order reinstating the charge against Wall subsequent to the order dismissing it for want of prosecution. It nevertheless appears that notwithstanding the happening of the events just above referred to, according to the official transcript or original papers, the charge was left standing against Wall.

At the trial of March 29, 1961, the prosecution offered the testimony of the two patrolmen, but apparently sought only to prove that Wall had been traveling at a speed of 70 miles an hour. As to this issue, however, only Patrolman Gerwig could and did testify, Patrolman Saddler confining his testimony to events taking place at and after the time he stopped Wall at the direction of Patrolman Gerwig.

Patrolman Gerwig admitted that he at no time saw the defendant and his testimony as to the speed of Wall's car is as follows:

"At ten twenty-five p. m. a northbound car on Highway 257 was checked by the radar—it was a '59 Pontiac—at seventy miles an hour."

From the testimony set forth above, it appears that someone, by means of radar, "checked" Wall's car at a speed of 70

330

miles an hour. What is not so clear is who made the check. Patrolman Saddler testified that both he and Patrolman Gerwig were "accompanied by an auxiliary patrolmen in each car * * *." It seems to us that the testimony above quoted might mean that the checking was done by Patrolman Gerwig or that it was done by someone else who was not identified and who did not testify.

Gerwig appeared reluctant to discuss any of the steps involved in the operation of the radar unit or what parts were subject to failure, stating:

"Well, it's quite a complex thing. I am not a technician."

At the conclusion of the prosecution's case, counsel for Wall moved to dismiss the charge but the court overruled the motion. The defense then offered the testimony of Wall and also that of three of the four passengers who were in the Wall automobile on the night Wall was arrested.

All of the defense witnesses, including Wall, testified that Wall's rate of speed was not greater than was reasonable or proper, having due regard for the traffic, surface and width of the highway and other conditions then existing; that no rain had fallen for several hours; that the road was dry; and that the road was four lanes wide, with a raised center divider on each side of which were two marked lanes for traffic. They testified further that there were two lanes for northbound traffic, with a marked stripe painted on the highway separating them; that the other side of the highway also had two lanes for southbound traffic; that apparently the two lanes for southbound traffic are divided by a painted stripe (although defense questioning as to the west half of the road was halted, erroneously, we feel, by the court upon objection by the prosecution that the alleged violation took place on the east half of the road); that Wall drove in a careful manner and was able to stop easily and quickly when ordered to do so by Patrolman Saddler; and that Wall's speed was between 50 and 60 miles an hour, Wall's own estimate being that he was probably driving between 55 and 60 miles per hour and not at 70 miles per hour as claimed by the one witness for the prosecution.

At the end of the trial, counsel for Wall renewed his motion to dismiss and the motion again was overruled. The court found the defendant guilty, which finding was of necessity based

principally upon the testimony of Patrolman Gerwig, with some support by Patrolman Saddler, that the traffic was light and that it had rained earlier. The court appears to have totally rejected the testimony given by Wall and the three other witnesses offered by the defense. It apparently was the court's theory that the use of radar is so highly accurate that other evidence questioning it lacks probative value. The statement made by the court when finding Wall guilty is as follows:

"The Court: Well, the court feels that radar is an accurate measurement of speed—a lot more accurate than any other method yet devised for the measurement of speed. Unless there is something to the contrary, the court feels that a speed of seventy miles an hour has been established, and the court so finds. Now, the question then comes—is that an unreasonable speed in the night season? While it wasn't raining at the time it had rained earlier in the evening. So, considering the fact that driving at a speed of seventy miles an hour you travel at approximately 103 feet a second, and the court feels, as a trier of the facts, that is an unreasonable speed to be operating a motor vehicle at nighttime under these circumstances. And the court finds the defendant guilty, to which you may note your exceptions."

Counsel for Wall filed a motion for a new trial upon nine grounds, and, when this was overruled, filed his notice of appeal to this court, making the following assignments of error:

"1. The judgment of the court is contrary to law.

"2. The judgment of the court in its findings upon the testimony and evidence, is contrary to and not sustained by the evidence.

"3. The findings of fact and the judgment of the court are manifestly against the weight of the evidence.

"4. The court erred in overruling defendant's motion for new trial.

"5. There are many other errors apparent upon the face of the record preventing defendant from having a fair and impartial trial."

Perhaps the chief objection urged on behalf of Wall relates to the apparent prosecution's theory that speed limits, which are prima facie unlawful, establish an absolute speed limit and

any speed, which is in excess of that which is made prima facie lawful, constitutes a violation of Section 4511.21, *supra*.

Counsel for Wall contends further that only when the speed of a motor vehicle is greater or less than is reasonable or proper, when considered in light of the traffic, surface and width of the highway and other conditions, is there a violation of Section 4511.21, and that the affidavit nowhere charged that Wall's speed was unreasonable or improper under existing conditions, and that the evidence offered by the prosecution likewise failed to show that Wall's speed was unreasonable or improper under the circumstances.

The affidavit alleged, and it was not in dispute, that the prima facie lawful speed at the place where the alleged violation occurred was 50 miles per hour. All the witnesses offered by the defense disputed the prosecution's charge that Wall was driving at the rate of 70 miles per hour. On the other hand, all the defense witnesses estimated Wall's speed at between 50 and 60 miles per hour, and Wall himself estimated his speed at between 55 and 60 miles per hour, testifying as follows:

"Q121. Now, when you first observed the patrolman, or was flagged down, about how fast were you operating your automobile; at what rate of speed? A. Well, when I operate a motor vehicle I always observe the road and so forth. I didn't look at the speedometer continually, but every time I checked I was going somewhere around fifty-five or sixty miles an hour."

This is a direct admission by Wall that he was driving in excess of the prima facie lawful speed rate of 50 miles an hour, and raises the question as to whether or not there is a fixed and absolute speed limit in Ohio. We think that question must be answered in the negative.

We shall not attempt any exhaustive research, but it is apparent that in the period between 1904 and 1919, the General Assembly repeatedly enacted statutes with a fixed speed limit and provided that any speed in excess thereof constituted a violation. Examples of the terminology used during this early period will suffice. Section 3490 of the Revised Statutes, as amended in 97 Ohio Laws, 283 (1904), contained this language:

"*\* \* \* and in no event shall such locomobile, automobile, motor cycle, or other motor vehicle, be operated at a greater rate of speed than eight miles an hour in the business and close-*

*ly built up portions of any municipality of this state, nor more than fifteen miles an hour in the other portions of such municipalities, nor more than twenty miles an hour outside of such municipalities \* \* \*."* (Emphasis added.)

In 98 Ohio Laws, 320, 322 (1906), House Bill 157, Section 11, contained the following:

"Section 11. *No person shall operate a motor vehicle on a \* \* \* in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate than one mile in six minutes, or elsewhere in a city or village at a greater rate than one mile in four minutes, or elsewhere outside of a city or village at a greater rate than one mile in three minutes \* \* \*."* (Emphasis added.)

On May 9, 1908, the "Automobile Law," consisting of thirty-seven sections (99 Ohio Laws, 538), was enacted, Sections 14 and 15 reading as follows:

"Section 14. No person shall operate a motor vehicle on the public roads or highways of this state at a rate of speed greater than is reasonable or proper, having regard to width, traffic and the use of the highway and the general and usual rules of the road or so as to endanger the property or life or limb of any person, or the safety of any property.

"Section 15. *In no event shall any automobile, \* \* \* be operated at a greater rate of speed than 8 miles an hour in the business and closely built up portions of any municipality in this state, no more than 15 miles an hour in other portions of such municipalities, no more than 20 miles an hour outside of such municipalities \* \* \*."* (Emphasis added.)

It will be observed that Section 14, *supra*, of the "Automobile Law" contained the provision requiring motor vehicles to be operated at a speed that is "reasonable or proper, having regard to width, traffic \* \* \*." It will also be observed that Section 15 re-enacted fixed definite speed limits.

With the adoption of the General Code the "reasonable or proper" provisions of Section 14 were incorporated into Section 12603 of the General Code, while the fixed speed limits found in Section 15 were incorporated in Section 12604 of the General Code. For example, Section 12603, as amended in 103 Ohio Laws, 161 (1913), read as follows:

"Whoever operates a motor vehicle or motorcycle on the

public roads or highways at a speed greater than is reasonable or proper, having regard for width, traffic, use and the general and usual rules of such road or highway, or so as to endanger the property, life or limb of any person, shall be fined not more than twenty-five dollars, and for a second offense shall be fined not less than twenty-five dollars nor more than fifty dollars.''

Section 12604, General Code, as amended in 107 Ohio Laws, 513 (1917), read as follows:

''*Whoever operates a motor cycle or motor vehicle at a greater speed than eight miles an hour in the business and closely built-up portions of a municipality or more than fifteen miles an hour in other portions thereof or more than twenty-five miles an hour outside of a municipality, shall be fined not more than twenty-five dollars, and, for a second offense shall be fined not less than twenty-five nor more than fifty dollars.*'' (Emphasis added.)

Thus, it will be observed that Section 12603, *supra,* again limited speed to that which was ''reasonable or proper, having regard for width * * *,'' while Section 12604, *supra,* again contained fixed speed limits of eight or fifteen miles an hour inside of municipalities and twenty-five miles an hour in rural sections.

This situation appears to have continued until 1919, when in 108 Ohio Laws, Pt. 1, 471, Section 12603 was amended, retaining the former requirements for a ''reasonable or proper'' speed, to which were added specified rates of speed which, when exceeded, ''shall be presumptive evidence of a rate of speed greater than is reasonable or proper.''

Of major importance is the fact that *in the same act, Section 12604, supra, containing the fixed speed limits, was repealed and not re-enacted nor was there any re-enactment of definite and fixed speed limits elsewhere.*

The new form of Section 12603 was as follows:

''Whoever operates a motor vehicle or motorcycle on the public roads or highways at a speed greater than is reasonable or proper, having regard for width, traffic, use and the general and usual rules of such road or highway, or so as to endanger the property, life or limb of any person, shall be fined not more than twenty-five dollars, and for a second offense shall be fined not less than twenty-five dollars, nor more than one hundred dollars.

"*A rate of speed greater than fifteen miles an hour in the business and closely built up portions of a municipality or more than twenty miles an hour in other portions thereof, or more than thirty miles an hour outside of a municipality, shall be presumptive evidence of a rate of speed greater than is reasonable or proper.*" (Emphasis added.)

In the years which have followed, although there have been many amendments to Section 12603 of the General Code, it subsequently was renumbered as Section 6307-21 of the General Code, and with the adoption of the Revised Code was numbered Section 4511.21. During all that time, the language and meaning have remained substantially the same.

For further detail as to the intervening amendments, reference should be made to 110 Ohio Laws, 135, 138; 113 Ohio Laws, 283; 117 Ohio Laws, 398; 119 Ohio Laws, 766, 775; 124 Ohio Laws, 514, 520; 126 Ohio Laws, 115, 119; 127 Ohio Laws, 931; and 128 Ohio Laws, 1270, 1274.

It has been held by the Supreme Court of Ohio that the test of whether an automobile is operated at a speed which is in violation of Section 4511.21, *supra*, is whether the speed is greater or less than is reasonable or proper under existing conditions.

In the case of *Swoboda* v. *Brown* (1935), 129 Ohio St., 512, the Supreme Court, in the fifth paragraph of the syllabus, held as follows:

"*The test prescribed by Section 12603, General Code, to determine the lawfulness or unlawfulness of speed of motor vehicles upon the public highway is whether such speed is greater or less than is reasonable or proper under existing conditions.*" (Emphasis added.)

In course of the opinion by Matthias, J., at pp. 519-520, there appears the following:

"*What would constitute a violation of Section 12603, General Code? This is a statute regulating and limiting speed in the operation of motor vehicles. There is no specific limitation or requirement therein, however, except that providing that 'no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.'*

"*In all other respects the only test prescribed by the statute to determine whether speed is unlawful is whether it is greater*

*or less than that which is 'reasonable or proper, having due regard to traffic, surface and width of the road or highway and of any other conditions then existing.'* Though this statute declares what speed shall be prima facie unlawful, still the ultimate test prescribed by statute is whether it is 'a speed greater or less than is reasonable or proper' under existing conditions.

"*A violation of these provisions, therefore, consists in operation at a speed greater or less than is reasonable or proper under existing conditions, which is a question to be submitted to and determined by the jury.* * * *" (Emphasis added.)

In the case of *City of Cleveland* v. *Keah* (1952), 157 Ohio St., 331, the Supreme Court held, in the first and second paragraphs of the syllabus, as follows:

"1. Where a municipal ordinance makes it prima facie unlawful for a motor vehicle to exceed a certain speed limit in a described locality, a speed greater than that specified does not establish the commission of an offense or constitute unlawful conduct per se, but establishes only a prima facie case under the ordinance. *Such a provision as to speed is merely a rule of evidence raising a rebuttable presumption which may be overcome by evidence showing that in the circumstances the speed was neither excessive nor unreasonable.*

"2. A prima facie case is one in which the evidence is sufficient to support but not to compel a certain conclusion and does no more than furnish evidence to be considered and weighed but not necessarily to be accepted by trier of the facts." (Emphasis added.)

See, also, *Vetel* v. *Meiklejohn* (1932), 12 Ohio Law Abs., 567; *Springfield* v. *Hanlon* (1939), 30 Ohio Law Abs., 596; *Columbus* v. *Brown* (1940), 31 Ohio Law Abs., 530, 535; and *Acker, Admx.*, v. *Columbus & Southern Ohio Electric Co.* (1944), 42 Ohio Law Abs., 430, 433.

In light of the foregoing, we conclude that the gist of the offense is whether the speed in question is greater or less than is reasonable and proper under the conditions specified in Section 4511.21, *supra*, and that the particular speeds made prima facie lawful or unlawful are just what they are called, prima facie evidence to be considered along with the other evidence in the case in determining the ultimate question whether the speed is reasonable and proper,

The affidavit contained no allegation that the speed was either greater or less than was reasonable or proper under existing conditions but referred only to speed, and hence the demurrer of the defendant thereto should have been sustained. We are also of the opinion that the prosecution's evidence had the same deficiency as the affidavit and tended to prove only a specific speed; that such speed was greater than the prima facie lawful rate; that it did not and was not intended to take into account existing conditions such as traffic, surface and width, and was therefore insufficient; and the motions of the defendant made at the close of the state's case and at the close of the entire case should have been sustained. It also follows that such erroneous rulings by the court below constituted prejudicial error and make it necessary to reverse and set aside the verdict and judgment of the court below and to remand the case.

Coming now to consider the weight of the evidence in this case, we observe that there was only a single witness to testify as to any alleged law violation and this evidence was confined to the alleged speed; that this evidence was in a far from satisfactory manner; that the great weight of the testimony is to the effect that it was not raining and had not been for several hours; that the road was dry; that it was wide and, there being no evidence to the contrary, may be assumed to be satisfactorily smooth; that there were no crossroads and in the entire three miles only three roads which dead end into Highway 257; that the speed traveled was between 55 and 60 miles an hour; that the motor vehicle was nearly new and in good condition; for which reason the judgment of conviction must be reversed upon the weight of the evidence.

The fifth assignment of error is based upon other errors apparent upon the face of the record and it becomes necessary to refer to certain other matters.

At the request of counsel for the defendant the clerk prepared a transcript of docket and journal entries which, with original papers, was forwarded to and filed in this court. That transcript contains at the end the official certificate of the clerk that "the foregoing is a full and *correct* copy of the proceedings in the matter of the *State of Ohio* v. *Nicholas J. Wall*." (Emphasis added.)

The transcript is somewhat difficult to interpret because

only the first of approximately fifteen items therein bears a date and it fails utterly to mention the filing of a demurrer. However, at the conclusion of the first entry, and at the conclusion of most of the other entries, there appears a date to which the hearing was continued, which, we assume, may be the date of the next following entry, and we shall make the assumption that the date of each entry after the first is the date at the end of the entry just above.

It is from the official certified transcript that we learn that Wall was previously tried and found not guilty (apparently on December 22, 1960), a demurrer at the same time being overruled; that, on January 23, 1961, Wall was tried again on the same charge, found not guilty and the charge was dismissed; and, that on the latter date, although he was never convicted of anything at that time, his former "sentence" was set aside.

The sixth through the ninth items on the first page of the transcript of docket and journal entries from the court below read as follows:

"Charge: Speed

"This day this cause came on for hearing, and the defendant, being present in open court; thereupon the case was continued to December 22, 1960 1:30 pm City Hall Rec. by order of the court.

"Charge: Speed

"This day this cause came on for hearing, and the defendant being present in open court; thereupon the court proceeded to hear the evidence adduced upon both sides, and after being fully advised in the premises, the court finds the defendant not guilty as charged in the affidavit; Demurrer overruled waiver by deft. of warrant issuance and service. Continued to January 23, 1961 1:30 pm.

"Charge: Speed

"This day this cause came on for hearing, and the defendant, being present in open court; thereupon the court proceeded to hear the evidence adduced upon both sides, and after being fully advised in the premises, the court finds the defendant not guilty as charged in the affidavit, thereupon the case was dismissed by order of the court. January 23, 1961.

"Charge: Speed

"This day this cause came on for hearing, and the defend-

ant, being present in open court former sentence vocated [vacated] and set aside, case continued to March 1, 1961 at 9:00 am."

From the above extracts taken from the official transcript, duly certified as correct, it therefore appears that Wall had previously twice been placed in jeopardy and twice had been found not guilty on the same charge, and it is difficult to understand the basis or authority for placing him in jeopardy a third time by the trial court on March 29, 1961.

Two other observations are pertinent concerning the record in this case. One of the papers attached to the file is a form apparently used by the court in re-assigning or disposing of cases. This form is printed on white paper and is approximately eight and one-half inches high and three and five-eighths inches wide, with place for the caption, the charge and the disposition. There are several such slips in the file, all of them undated, and one of which, under the signature of the trial judge, contains the following notation: "Dismissed. Want of prosecution."

If the case in fact was dismissed for want of prosecution, there is an absence of any journal entry or court order reinstating the case, which, in our opinion, is a still further reason why the alleged trial and conviction were totally and completely illegal.

In conclusion, it is noted that there is attached to the affidavit a paper, entitled a "Statement of Facts," which bears the signature of Patrolman Gerwig, the same officer who signed the affidavit in this case.

This paper appears never to have been given an exhibit number or offered in evidence and may never have come to the attention of the defendant or his counsel, yet it contained evidentiary matter of highest importance. It contains several statements of fact which either are unsupported by or are contradicted by testimony in this case.

For example, in this so-called "Statement of Facts" there is the following: "Driver Condition—Had Been Drinking." This obviously was intended to convey the impression that Wall was drunk or under the influence of intoxicating liquor.

Yet when the officer, who signed this same "Statement of Facts," testified at the trial, he stated without qualification that

he did not see the defendant at anytime on the night of the arrest. His testimony is as follows:

"Q6. On the 10th of September 1960 did you have an occasion to be in the vicinity of highway 257 about, oh, nine o'clock in the evening—something like that? A. Approximately ten: nine-thirty.

"Q7. And did you have an occasion at that time to see the defendant in this case, Nicholas J. Wall? A. No, sir.

"By the Court:

"Q8. You did not see the defendant? A. No I didn't."

This statement as to Wall's alleged intoxication, if considered by the court below, was highly prejudicial to Wall. The paper containing it was fastened by several staples to the affidavit when the record reached this court, and this "Statement of Facts" completely covered the affidavit to which it was securely attached. Any such use or submission, if done in this manner, was highly prejudicial.

Further, it appears that the unmistakable inference arising from the "drinking driver" statement was totally unsupported in the testimony. The only evidence was that Wall was *not* under the influence of alcohol. Patrolman Saddler, who made the arrest, said he noticed the smell of alcohol but volunteered the statement that Wall was *not* under the influence of alcohol. His testimony was as follows:

"Q83. Did he do that? A. Yes, sir, he did. He turned around and came back past—I don't know whether the radar unit was there then or not because I was not with him. But he did go back south. He had a smell of alcohol about his person, *but he was not under the influence*. In fact, I gave him a citation then and he went on his way." (Emphasis added.)

This same statement of facts states, "Weather cloudy light rain off and on highway wet in spots. Traffic light."— whereas the evidence is overwhelmingly that the highway was not wet but was dry, that it was not raining and so far as Wall's car is concerned both ahead and behind there was a complete absence of any traffic whatsoever. There is a difference between a light amount of traffic and a total absence of any other traffic.

We conclude, on the basis of the errors assigned or apparent upon the face of the record, as more specifically set forth

above, that prejudicial error has intervened which makes it necessary for this court to vacate, set aside and reverse the verdict and judgment of the court and to remand this cause to the court below.

*Judgment reversed.*

DUFFEY, P. J., concurring. The affidavit does not state the time of the offense. The defendant filed a demurrer. Section 4511.21 of the Revised Code provides:

"In every charge of violation of this section the affidavit and warrant shall specify the time, place, and the speed at which the defendant is alleged to have driven * * *."

I, therefore, concur that the affidavit is defective and the judgment must be reversed.

I am impressed with the fact that on the record as it now stands the defendant has been twice tried and twice found not guilty prior to the present trial. It is somewhat difficult to understand how, on this record, the third trial came about.

DUFFY, J., concurring. I concur in the reversal for the reason that the affidavit was insufficient to support a prosecution under the statute. See *City of Columbus* v. *Rodgers*, 93 Ohio App., 328, and discussion in *State* v. *Williams*, 145 N. E. (2d), 245, and I concur in paragraphs one and two of the syllabus.