[Cite as *Smoot v. KBO, Inc.*, 2013-Ohio-4079.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK   COUNTY**

| | | |
|---|---|---|
| VICTOR L. SMOOT | : | |
| | : | Appellate Case No. 2013-CA-10 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 11-CV-0957 |
| v. | : | |
| | : | |
| KBO, INC. | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of September, 2013.

. . . . . . . . . . .

MICHAEL J. MULDOON, Atty. Reg. #0034007, 1375 Dublin road, Columbus, Ohio 43215
        Attorney for Plaintiff-Appellant

SCOTT K. JONES, Atty. Reg. #0069859, and EVERETT L. GREENE, Atty. Reg. #0077338, Graydon Head & Ritchey LLP, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202-3157
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.,

{¶ 1}    The plaintiff-employee appeals the entry of summary judgment for the defendant-employer on claims of retaliation under R.C. 4123.90 of the Workers' Compensation

Act. Because there is no evidence of a causal connection between the plaintiff-employee's protected action and the defendant-employer's adverse action, we affirm.

## I. FACTS

{¶ 2}     Victor Smoot drove a semi truck for Klosterman Baking Co. (KBO, Inc.) at its Springfield, Ohio, location. During his more than 20 years there, he has filed five workers' compensation claims; the last two were in 2004 and 2006. The 2004 claim was for injuries to Smoot's neck and back. The 2006 claim was for injury to his right wrist. The Industrial Commission determined that both sets of injuries resulted in percentages of permanent partial disabilities.

{¶ 3}     In October 2009, Smoot was medically evaluated in connection with his 2004 back injury and 2006 wrist injury. The physician who evaluated his back injury sent a written report to Klosterman that says (among other things) that Smoot has constant pain in his back that kept him awake at night and was made worse by prolonged sitting. The physician who evaluated Smoot's wrist injury also sent a written report to Klosterman. The report states (among other things) that Smoot has severe pain in his wrist and that he has lost range of motion and strength. The report also states that Smoot's percentage of permanent disability for that injury is higher than the Industrial Commission's determination. Neither report imposes any work restrictions.

{¶ 4}     On October 21, 2009, Smoot filed with the Bureau of Workers' Compensation (BWC) an application for the increase of percentage of permanent partial disability. Later that month, Klosterman removed Smoot from his job, citing concerns about his ability to drive a truck safely. The following month, Smoot filed an application with the BWC for temporary total disability from October 23, 2009, until November 14, 2009, claiming that severe pain in his wrist

prevented him from working. During the next couple of months, Smoot was medically evaluated by other physicians. Each physician noted his limitations, but each returned him to work with no restrictions.

{¶ 5} Klosterman had a modified duty off-site (MDOS) program for employees recovering from work-related injuries. Under the MDOS program, when Klosterman does not have a suitable light-duty assignment available for a recovering employee, the employee is given such an assignment at a charitable organization. The employee receives the same pay and benefits and must follow the same work rules. On February 8, 2010, Klosterman sent Smoot a letter telling him that he had been given an MDOS assignment. The letter states that Smoot is to report to the charity starting February 11. The letter also reminds Smoot that all of Klosterman's work rules apply to the MDOS assignment, including its attendance policies. On the advice of his union representative, Smoot refused the assignment and never reported to the MDOS assignment. On February 26, Klosterman terminated Smoot's employment for violation of its attendance rules.

{¶ 6} Smoot is a member of the Teamsters union, which has a collective bargaining agreement with Klosterman. The union grieved the termination, arguing that the MDOS program was for employees with restrictions and Smoot did not have any restrictions. The grievance went to arbitration. At the arbitration hearing, Klosterman's director of human resources testified about what lead to Smoot's removal from his job. The HR director said that after he read the two October 2009 reports he became concerned about Smoot's ability to drive a truck safely. So he decided to take Smoot off the job until he could determine what, if any, safety risk Smoot posed.

Ultimately, the arbitrator reinstated Smoot.[1]

{¶ 7}    In September 2011, Smoot filed a statutory action against Klosterman under R.C. 4123.90, the Ohio Workers' Compensation Act provision that allows claims against an employer for workers' compensation retaliation. Klosterman moved for summary judgment based on a transcript of the arbitration hearing, a 2010 deposition of Smoot, and a 2012 deposition of Smoot. The trial court concluded that no genuine issue exists as to the reason that Klosterman terminated Smoot's employment and that reasonable minds could find only that Klosterman did not retaliate against Smoot for filing the 2006 claim. Consequently the trial court sustained the summary-judgment motion and entered summary judgment for Klosterman.

{¶ 8}    Smoot appealed.

## II. ANALYSIS

{¶ 9}    Smoot's sole assignment of error alleges that the trial court erred by rendering summary judgment. We review de novo the rendering of summary judgment. *See Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Rendering summary judgment is appropriate if it is shown (1) that no genuine issue exists as to any material fact; (2) that the moving party is entitled to judgment as a matter of law, and (3) that, construing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, reasonable minds can come to only one conclusion, and that conclusion is adverse to that party. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). The party requesting summary judgment has the burden to show these things. *Harless* at

---

[1] The reason for the arbitrator's decision is not given by the parties or revealed by the record. Smoot's brief says only that he was reinstated.

66.

## A. Statutory Retaliation Claims

{¶ 10} To establish a claim of retaliation under R.C. 4123.90, a plaintiff-employee must prove (1) that he suffered "an injury or occupational disease which occurred in the course of and arising out of his employment," (2) that, for the injury or disease, he "filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act," (3) that the defendant-employer "discharge[d], demote[d], reassign[ed], or t[ook] [some] punitive action" against him, and (4) that the defendant-employer took the adverse action because he engaged in the protected action. R.C. 4123.90. Absent direct evidence of retaliation, a retaliation claim "must be analyzed under the familiar burden-shifting approach applicable to most discrimination claims." *Wysong v. Jo-Ann Stores, Inc.*, 2d Dist. Montgomery No. 21412, 2006-Ohio-4644, ¶ 10. First the plaintiff-employee must establish a prima facie claim of retaliation. *Id.* Then the burden shifts to the defendant-employer to articulate a legitimate, nonretaliatory reason for taking the adverse action. *Id*. Finally, the burden shifts back to the plaintiff-employee to prove that the defendant-employer's reason is pretext and that it actually took the adverse action because he had engaged in the protected action. *Id*.

## B. Smoot's Retaliation Claims

{¶ 11} Smoot's complaint claims that Klosterman violated R.C. 4123.90 by discriminating against him and terminating his employment because he pursued his rights under the Workers' Compensation Act. In support of this claim, the complaint alleges the following facts: Smoot suffered an on-the-job injury in August 2006, (Amended Complaint, ¶ 2); he filed a workers' compensation claim for the injury, (*id*. at ¶ 3); Smoot "pursued his Workers'

Compensation claim and filed requests for compensation based on his industrial injury and pursued his rights under the laws of the State of Ohio," (*id*. at ¶ 4); Klosterman took him off the job, (*id*. at ¶ 5-6, Exhibit A); Klosterman terminated Smoot's employment, (*id*. at ¶ 7). The complaint alleges that Smoot engaged in protected action twice and that Klosterman took adverse action against Smoot twice.[2] But the complaint does not causally connect either protected action with either adverse action. Four causal connections are possible: (1) Smoot's filing the initial claim caused Klosterman to take him off the job, (2) Smoot's filing the initial claim caused Klosterman to terminate his employment, (3) Smoot's later pursuit of permanent partial disability caused Klosterman to take him off the job, and (4) Smoot's later action caused Klosterman to terminate his employment. Since the evidence required to prove each of these combinations is different, each combination is a different claim.[3]

{¶ 12} Neither Klosterman nor the trial court appears to have recognized that the complaint asserts multiple claims. Klosterman's motion for summary judgment contends that the evidence shows no causal connection between Smoot's filing the initial claim and its terminating his employment. The motion effectively asks for judgment on claim (2) only. But Smoot's opposition memorandum opposes summary judgment on claim (3). It does not dispute Klosterman's contention regarding claim (2) but contends that the evidence supports a causal connection between his filing the application for an increased percentage of permanent partial disability and Klosterman's removing him from his job. The trial court rendered summary

---

[2] Filing the initial claim is plainly protected under R.C. 4123.90. But it is not clear that filing an additional application is also protected action. Because the issue was not raised, we assume that pursuit of the additional award is protected. Similarly, because whether Klosterman's actions constituted "punitive action" was not raised, we assume they were.

[3] Smoot, of course, may recover only once.

judgment on all four possible claims, but its written decision considers only Klosterman's contention, ignoring Smoot's.

{¶ 13}   On appeal, Smoot makes the same causal-connection contention regarding claim (3) that he made before the trial court. Klosterman also makes its same contention regarding claim (2). Although the trial court did not consider Smoot's contention, because our review is de novo we will consider it. We assume that summary judgment for Klosterman is appropriate on claims (1), (2), and (4), because Smoot does not dispute judgment on these claims.

{¶ 14}   Thus the question is whether summary judgment is appropriate on claim (3). Our review focuses on the causal-connection element of Smoot's retaliation claim–the evidence on whether a causal connection exists between Smoot's filing the application for an increase in the percentage of permanent partial disability and Klosterman's removing him from his job.

### C. The Evidence

{¶ 15}   Smoot fails to show that a genuine issue exists as to the causal-connection element. His argument points to no evidence that affirmatively links his filing the application with Klosterman's taking him off the job. He merely points out that the physicians who evaluated him said that he could return to his truck-driving job without restriction. Klosterman had no reason not to allow him to do his job, Smoot says, so it must have taken him off the job because he filed the application (which he did only days before he was removed). Smoot does not point to prima facie evidence of a connection, nor does he point to evidence that the reason Klosterman gave for taking him off the job is pretext.

{¶ 16}   Prima facie evidence "does not compel a conclusion" but is "sufficient to support a conclusion." *State v. Williams*, 11th Dist. Portage, No. 2001-P-0112, 2002-Ohio-6920, ¶ 14,

citing *State v. Wall*, 115 Ohio App. 323, 336, 185 N.E.2d 115 (10th Dist.1962); *see Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E.2d 1169, ¶ 25 (saying that a plaintiff establishes a prima facie case when he has produced sufficient evidence to avoid a directed verdict). Prima facie evidence of a causal connection in a retaliation claim exists if an "inference of a causal connection" can reasonably be made between the plaintiff-employee's protected action and the defendant-employer's adverse action. *Wysong*, 2006-Ohio-4644, at ¶ 12. Here, no such inference can reasonably be made. "[W]e recognize that '[t]he burden of establishing a prima facie case of retaliation is not onerous and is easily met.'" *Id.*,   quoting G*reer-Burger v. Temesi*, 8th Dist._Cuyahoga No. 87104, 2006-Ohio-3690, ¶ 15. But here no evidence so much as hints that the application played any part in the decision to remove Smoot from his job. There is simply no evidence that the reason Klosterman removed Smoot was his filing the application. Rather, the HR director's cross-examination testimony at the arbitration hearing suggests that when he decided to remove Smoot he had not yet seen the application:

> Q. My understanding from your testimony on direct examination, you said this was the application for increased percentage of permanent partial disability filed by the attorney for Mr. Smoot; is that correct?
>
> A. Yes, sir.
>
> Q. And the date on that is October 21, 2009; is that correct?
>
> A. Yes, sir.
>
> Q. And, again, this document was a document that you would have eventually received from * * * whoever it goes to before it gets to you?
>
> A. It eventually would have gotten to me, yes.

Q. And do you know when it got to you?

A. No, sir, I don't.

(Arb. Hearing Tr. 95-96).

{¶ 17} "[A] retaliatory discharge claim survives summary judgment if a plaintiff raises a genuine issue of material fact as to the veracity of an employer's explanation." (Citation omitted.) *Wysong* at ¶ 14. The plaintiff-employee must "demonstrate a genuine issue of material fact on the issue of pretext" by showing that the defendant-employer's proffered reason (1) lacks a factual basis, (2) did not actually motivate the adverse action, or (3) is insufficient to motivate the adverse action. *Id.* at ¶ 13. Smoot cannot, or at least does not, show any of these.

{¶ 18} Klosterman's proffered reason for removing Smoot from his job is its concern about his ability to drive a truck safely. At the arbitration hearing, Klosterman's HR director said that in October 2009 he received (and read) two reports from physicians who had evaluated Smoot earlier that month. One report was from a physician who evaluated Smoot in connection with the back injury Smoot suffered in 2004. The HR director quoted some statements in the report that worried him:

·   "'[Smoot] has had constant 8 out of 10 pain in his back since [receiving the injuries].'" (Arb. Hearing Tr. 38).

·   "'He states that the discomfort keeps him awake at night, but is not keeping him from driving.'" (*Id.*).

·   "'He complains of not being able to sleep for more than two to three hours due to his pain. He states that it is interfering with household chores such as vacuuming and dishes and hurts while driving, but is not interfering with driving. The pain is sharp and

shooting down the legs from the back.'" (*Id*. at 39).

· "'He does complain of numbness and tingling into his legs and feet, but is not having difficulty with falling or climbing steps.'" (*Id*.).

The other report was from a different physician who evaluated Smoot in connection with his 2006 wrist injury. Some of the worrisome statements in this report quoted by the HR director include:

· "'Physical limitations due to this injury or occupational disease: The claimant has difficulty with range of motion in the wrist and loss of strength.'" (*Id*. 42).

· "'Locations of increased and decreased sensitivity: The claimant experiences numbness, tingling and burning in his wrist.'" (*Id*.).

· "'Adverse effects on sleep: Intermittent restless sleep due to discomfort from injuries sustained in industrial accident.'" (*Id*.).

· "'Activities which worsen symptoms: Cold exposure worsens symptoms.'" (*Id*.).

The HR director said that Klosterman had not known that Smoot was still having such severe problems, so the reports "kind of caught [them] blind-sided." (*Id*. at 45). The director said that he thought the best thing to do was take Smoot off the job temporarily. He called Klosterman's director of transportation and told him that he had "some major concerns about Mr. Smoot's ability to operate [their] vehicles safely." (*Id*.). The HR director then called the human resources coordinator at Klosterman's Springfield location, Krystel Wheeler.[4] He told her that he had decided "to temporarily take Mr. Smoot off of the job until [they] could figure out where [they]

---

[4] The HR director is based in Cincinnati. There is a human resource coordinator at each bakery location who handles local human resource matters.

were with this evaluation." (*Id*. at 45).

{¶ 19}  No evidence controverts the HR director's reason for taking Smoot off the job or suggests that the reason is mere pretext for unlawful retaliation. Wheeler was the one who actually told Smoot that he was being taken off the job, and Smoot's deposition testimony about what she told him corroborates the HR director's reason: "She said, we don't trust you driving our trucks. That was her exact words * * *." (2010 Smoot Dep. 10); "She just said they don't–they don't trust me driving a truck." (*Id*. at 12). Also, uncontroverted evidence shows that at the time Smoot was removed from his job he was unable to work because of the pain in his wrist. Smoot was removed near the end of October 2009, either on the 23rd or the 30th.[5] The month after Smoot was removed, he filed an application for temporary total disability compensation claiming that because of "severe pain in [his] right hand and wrist," (2012 Smoot Dep. at 47), he was unable to work from October 23, 2009, until November 14, 2009, (*id*. at 45). And Smoot admitted during deposition that severe pain in his right hand and wrist prevented him from operating a truck safely. (*Id*. at 48).

{¶ 20}  No genuine issue of fact exists as to the causal connection between Smoot's filing the application for the increase of percentage of permanent partial disability and Klosterman's taking him off the job. Construing the evidence most strongly in Smoot's favor, a reasonable mind could conclude only that Klosterman took him off the job because it was worried about his ability to drive a truck safely. Klosterman is entitled to judgment as a matter of law. We conclude therefore that summary judgment for Klosterman is appropriate on claim (3) of

---

[5]The date is not clear. According to Smoot, it was the 23rd. (2010 Smoot Dep. 10-11). But according to Smoot's attorney, it was either the 30th, (Arb. Hearing Tr. 91, 100, 106), or the 31st, (*id.* 17). The HR director agreed with Smoot's attorney that it was the 30th. (*Id.* 96).

Smoot's complaint.

{¶ 21}   The sole assignment of error is overruled.

{¶ 22}    The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN and CELEBREZZE, JJ., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Michael J. Muldoon
Scott K. Jones
Everett L. Greene
Hon. Douglas M. Rastatter