BURNS, EXRX., ET AL., APPELLANTS, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLEE.

(No. 87AP-62 — Decided September 15, 1987.)

*John A. Miller & Assoc., John A. Miller, Robert J. Campbell* and *Robert W. Quirk,* for appellants Edith Burns, executrix of the estate of George T. Gibson, a.k.a. George T. McLeod, et al.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark T. D'Alessandro,* for appellee.

BRYANT, J. Plaintiff-appellant, Edith Burns, executrix, appeals from a judgment for defendant-appellee, Ohio Department of Transportation ("ODOT"), following a trial in the Ohio Court of Claims.

On September 2, 1982, plaintiff's decedents were traveling a portion of State Route 7 in Columbiana County, Ohio, at milepost 5.3. While State Route 7 is, and was at that time, a four-lane highway, it was originally constructed in the 1920s as a two-lane highway. In the early 1950s, ODOT, then the Department of Highways, in conjunction with plans approved by the federal authorities, undertook a project to convert the two-lane highway to four lanes. Although State Route 7 runs in a generally north-south direction, at milepost 5.3 it is east and west. To the north of the westbound lane is a steep rock slope; to the south of the eastbound lane is an easement, the railroad tracks, and then the river. A curb median separates the two westbound lanes from the two eastbound lanes.

On September 2, 1982, plaintiff's decedents were traveling eastbound at milepost 5.3 of State Route 7. Dennis Stock was driving in the opposite direction a truck-trailer loaded with 80,000 pounds of coal. As he proceeded westbound, a sizeable rock from the slope hit the right side of the cab of his truck and forced him toward the eastbound lanes. He tried to pull the steering wheel back to the right, but the vehicle would not return to the westbound lanes. When he saw plaintiff's decedents' car approaching eastbound, he grabbed the steering wheel to the point of lying down on the passenger seat in an effort to pull the steering wheel to the right. He was unable to

control the vehicle, crossed the median, and struck plaintiff's decedents' car. The truck-trailer came to a rest on its side, with the plaintiff's decedents' car crushed beneath the coal truck. All three of plaintiff's decedents were killed as a result of the accident.

At trial, plaintiff contended that defendant, ODOT, was liable for the negligent design, construction and maintenance of State Route 7. More particularly, plaintiff produced evidence that the rock formation of the north edge of State Route 7 at the 5.3 milepost area presented unstable rock strata. Inasmuch as the timing of the rock falls is impossible to predict, the testimony indicated a need for both protection to minimize the impact of rock falls, and for appropriate warnings regarding potential rock falls. Plaintiff contended that although the state had provided a small bench area between the highway pavement and the toe of the rock slope, the space was inadequate to meet the need for protection.

Moreover, plaintiff presented evidence that in the early 1950s, methods of controlling or eliminating rock falls were well-known to both civil engineers and geologic scientists. In particular, plaintiff's evidence indicated that a greater distance between the traveled portion of the highway and the toe of the slope would have assisted in minimizing the hazard presented by rock falls and landslides. The evidence further showed that the use of various devices such as rock bolts, concrete retaining walls, fences to catch debris, wire mesh over the side of the slope, or guard rails or rail fences to catch larger pieces of falling rock would have been available in the early 1950s. Further, any of the foregoing would have been capable of catching or retaining rocks of the size which caused the accident killing plaintiff's decedents. As a result, plaintiff's

expert opined that the design and construction of State Route 7, more particularly at milepost 5.3, was inadequate in that it did not provide for a mechanism to either control the potential landslides or to restrict landslide debris from entering paved areas.

Plaintiff's expert also testified that this portion of State Route 7 had an alarming history of risk. More particularly, he noted forty incidents from approximately February 1980 through June 1982 involving the removal of debris from the road. Given that history, he testified that the defendant should have retrofitted or upgraded the highway as a result of recognizing the major hazard the highway presented to vehicular travel.

In the final analysis, plaintiff's evidence indicated that the design and construction of State Route 7 in the early 1950s did not meet the normally expected standards of highway engineering in effect at that time; and that defendant did not meet the normally expected engineering standards for maintenance since the original construction.

In response, defendant relied primarily on the prohibitive costs involved in creating a larger bench area between the paved highway and the toe of the slope. Further, defendant asserted that warning signs placed along the roadway and monitoring during the winter and spring months as a lookout for fallen debris were sufficient to discharge any duty that defendant owed to motorists along State Route 7.

At the conclusion of the trial, the Court of Claims took the case under advisement, and issued a decision finding that the design, construction and maintenance of State Route 7 was in whole a discretionary function of ODOT and that ODOT had not abused its discretion. Accordingly, the court rendered judgment for the defendant.

Plaintiff sets forth two assignments of error:

"1. The trial court erred in holding that the design and maintenance of state highways are discretionary functions for which the Ohio Department of Transportation can be sued only if it abuses its discretion.

"2. The judgment rendered by the trial court is against the manifest weight of the evidence."

Inasmuch as both assignments of error are interrelated, we will address them jointly.

As the Supreme Court noted in *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776, at paragraph one of the syllabus, although "the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion," once the state has reached a decision involving the exercise of discretion, it may be held liable "in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities." *Id.* at 70, 14 OBR at 508, 471 N.E. 2d at 778. In analyzing the defendant's actions regarding State Route 7, the decision to expand State Route 7 into a four-lane highway was a discretionary decision under *Reynolds, supra.* However, the implementation of that decision, including the design and construction of State Route 7, was a ministerial function for which the defendant may be held liable for its negligence. As a result, the trial court erred in applying the abuse of discretion standard in determining defendant's liability herein.

Likewise, the maintenance of State Route 7 since its construction was not a discretionary act on the part of defendant, but rather a ministerial function. Again, rather than an abuse of discretion standard, the trial court should have applied a negligence standard in determining the defendant's liability. The trial court having applied the incorrect standard in determining whether plaintiff had carried its burden of proof by a preponderance of the evidence, we sustain plaintiff's first assignment of error.

A review of the record reveals that plaintiff clearly presented evidence from which reasonable minds could conclude that the defendant was negligent both in the design and the construction of State Route 7 and in its maintenance since that time. Indeed, plaintiff's evidence showed that despite defendant's knowledge of a problem with rock slides in the area, the defendant constructed State Route 7 without any of the preventive measures which could have precluded the accident subject of this lawsuit. Moreover, despite advancing technology and the advent of new devices such as the jersey barrier, defendant did not implement any of those devices along State Route 7, even in the face of numerous rock slides and accidents in the very area where plaintiff's decedents were killed. What is more, the only preventive measures defendant took were the signs placed along the highway warning motorists of falling rock, and the crews that monitored the highway to remove fallen debris, both of which measures were inadequate to prevent the type of accident involved herein. In response, defendant has presented evidence of prohibitive costs and some reliance on federal authorities.

Rather than substitute the judgment of this court for that of the Court of Claims in its initial analysis of the evidence under an appropriate standard, we remand the case to the trial court for an evaluation of the evidence under the negligence standard. As a

result, we overrule plaintiff's second assignment of error for the purpose of allowing the trial court to evaluate the evidence presented in light of our decision on plaintiff's first assignment of error.

*Judgment reversed and cause remanded.*

MCCORMAC and HOFSTETTER, JJ., concur.

HOFSTETTER, J., retired, of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.