**RHODUS, Appellant and Cross–Appellee,**

**v.**

**OHIO DEPARTMENT OF TRANSPORTATION, Appellee and Cross–Appellant.**

[Cite as *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 723.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–494.

Decided May 22, 1990.

724

*Baden, Jones & Scheper Co., L.P.A.,* and *David H. Landis,* for appellant and cross-appellee.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Eric A. Walker,* for appellee and cross-appellant.

REILLY, Presiding Judge.

Plaintiff-appellant and cross-appellee, John Rhodus ("plaintiff"), appeals from a decision of the Court of Claims of Ohio rendering judgment in favor of defendant-appellee and cross-appellant, Ohio Department of Transportation ("defendant" or "ODOT").

Plaintiff asserts four assignments of error:

"I. The trial court erred to the prejudice of appellant in holding that compliance with the minimum requirements of the Ohio Manual of Uniform Traffic Control Devices constitutes ordinary care as a matter of law.

"II. The trial court erred to the prejudice of appellant in determining that appellee was not negligent in failing to follow its own sign placement plan which was based upon its own engineering and safety judgment.

"III. The finding of the trial court that the visibility of motorists was not obstructed by the placement of the Type III barricade was against the manifest weight of the evidence.

"IV. The finding of the trial court that the placement of the Type III barriade was not a proximate cause of appellant's accident was against the manifest weight of the evidence."

Defendant has filed the following cross-assignment of error, although not stated as such:

"Whether appellee can cross-appeal to prevent the court from reversing the trial court's decision.

"A. Since appellant failed to meet his burden of proof during his case-in-chief, appellee's motion for an involuntary dismissal should have been granted.

"B. Since appellee's witnesses testified that the Type III barricade was placed on the north berm of the intersection of State Route 129 and Chapel Road, the lower court erred in finding that the Ohio Department of Transportation placed the barricade in the center of State Route 129."

Plaintiff was riding his motorcycle with a friend as a passenger. He was traveling east on State Route 129 in Butler County through an area which was about to undergo road construction. This section, near State Route 732, had been marked with detour signs to reroute traffic.

As plaintiff came to the intersection of Chapel Road, he observed an automobile traveling in a westbound direction toward him. That automobile was driven by Kathy York. As she approached, she attempted to make a left turn onto Chapel Road. Upon crossing the eastbound lane on which plaintiff was proceeding, the two vehicles collided. Plaintiff sustained permanent injury as a result of this collision.

Plaintiff filed an action against defendant in the Court of Claims alleging that defendant was negligent in the placement and maintenance of a Type III barricade sign, which plaintiff claimed was placed in the middle of the roadway. Plaintiff contended that the sign, so placed, obstructed the view of Kathy York, thus causing and contributing to the injury to plaintiff. A bench trial was held in the Court of Claims. The trial court found in favor of

defendant and issued a decision including findings of fact and conclusions of law.

The trial court's decision discloses the following facts regarding the incident. A portion of State Route 129 was closed to traffic for culvert replacement. Hence, a typical Type III barricade was placed in the middle of State Route 129 at State Route 728 facing traffic headed in a westerly direction. The sign was five feet tall and stated: "Bridge Out, 7 Miles Ahead, Local Traffic Only—Detour." One could see under the sign as there was an open space in it. Another such sign was placed where Chapel Road forms a "T" intersection with State Route 129. This latter sign, which was alleged to have caused the accident, had the same size and open space as described above.

The trial court found that, despite defendant's argument that vandals moved the sign to the middle of the road, the sign had been installed in the middle of the road and remained there, rather than on the right-side berm. The court apparently found little weight in the testimony of defendant's witness on this point. This witness was a sign installer who testified to what he ordinarily would do concerning the placement of signs. He could not testify to how he placed this particular sign.

As to the accident itself, the court made several findings. The court found that it was a clear sunny day with visibility up to six hundred feet beyond Chapel Road. Kathy York had observed both of the above-mentioned signs. As she slowed down to make a left turn on Chapel Road, plaintiff saw her and moved his bike to the south berm of State Route 129 so that she would see him. Nevertheless, she entered into plaintiff's lane of travel and the two vehicles collided. The court specifically found that York's view was not obstructed. The court concluded:

" * * * My best judgment and finding is that York failed to see the Rhodus bike and when she heard his horn she froze and completely stopped her automobile, entirely blocking travel in the easterly side of State Route 129. Her negligence was the sole and proximate cause of this accident[.]"

Further, the court found that the installation plan for the sign in question provided for it to be placed on the berm, and not in the middle of the highway where it was actually placed. In any event, the court found that the actual installation met the standards of the Ohio Manual of Uniform Traffic Control Devices. Hence, the court concluded that defendant was not negligent. Moreover, the court found that, even if the sign was negligently placed, this was not the proximate cause of plaintiff's injuries.

Plaintiff's third and fourth assignments of error are interrelated and are considered together. Plaintiff disputes the trial court's findings that York's view was not obstructed by the sign and that her negligence was the sole and

proximate cause of the accident. Plaintiff contends that these findings were against the manifest weight of the evidence.

■ The function of a reviewing court in considering whether a factual finding is against the manifest weight of the evidence is to determine whether there is some competent, credible evidence in the record which supports the trial court's finding. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. In this case, there was some competent, credible evidence supporting the findings that York's view was not obstructed by the sign and that her own negligence was the sole and proximate cause of plaintiff's injuries.

■ Pursuant to R.C. 4511.42, York had the duty to yield the right-of-way to oncoming traffic. Thus, even if the sign was negligently placed and obstructed her view in some manner, she had the duty to slow down to an acceptable speed or stop, and then look for oncoming traffic. The evidence in the record shows that she had the opportunity, but did not do this. York testified that: "I slowed down getting ready to make my turn, and I glanced up past the sign and I didn't see anything; so I went ahead and started to make my turn."

Dana Diedrichs, plaintiff's passenger, testified that York panicked and stopped her vehicle in plaintiff's lane of travel. York, however, never stopped before initiating her turn, but instead drove at approximately 15 m.p.h. into the intersection. Diedrichs stated that York blocked the entire road. Thus, a reasonable inference is that York did not hit plaintiff in nudging forward to see past the sign. Instead, she simply proceeded to drive into the intersection.

It is emphasized that there was an open space in the sign allowing for vision of the road. Plaintiff's photographs demonstrate this. Hence, there is some evidence that York's view would not have been obstructed if she would have looked. Seeing a sign which blocks some view of the road did not entitle her to assume that the road was clear. And, the trial court noted that, if York would have proceeded with caution instead of blocking the road, the accident could have been avoided.

Plaintiff's third and fourth assignments of error are not well taken.

Plaintiff's first and second assignments of error are also interrelated and will be considered together. Plaintiff disputes the trial court's conclusion that defendant complied with its manual and therefore was not negligent. Plaintiff contends that the trial court erred by failing to accord proper significance to the sign installation plan promulgated for this particular construction area.

■ Pursuant to R.C. 5501.11, ODOT has the responsibility to construct and maintain highways in a safe and reasonable manner. However, the state is

not an insurer of the safety of its highways. Its duty is to maintain its highways in a reasonably safe condition. *Knickel v. Dept. of Transportation* (1976), 49 Ohio App.2d 335, 3 O.O.3d 413, 361 N.E.2d 486.

R.C. 4511.09 further provides that ODOT should " * * * adopt a manual and specifications for a uniform system of traffic control devices * * * for use upon highways within this state. Such uniform system shall correlate with, and so far as possible conform to, the system approved by the American Association of State Highway Officials." Moreover, R.C. 4511.10 provides that ODOT " * * * may place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are necessary to indicate and carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, or to regulate, warn or guide traffic."

■ In accordance with these statutes, it has been held that ODOT has a duty to comply with the requirements of its own manual and specifications for a uniform system of traffic control devices. *Pierce v. Ohio Dept. of Transp.* (1985), 23 Ohio App.3d 124, 23 OBR 235, 491 N.E.2d 729. See, also, *Slavick v. Ohio Dept. of Transp.* (1988), 44 Ohio App.3d 19, 540 N.E.2d 748 (discussing construction-site liability).

■ Liability may occur, pursuant to the manual, when the applicable terms of the manual are obligatory and those terms are not complied with. See *Lumbermens Mut. Cas. Co. v. Ohio Dept. of Transp.* (1988), 49 Ohio App.3d 129, 551 N.E.2d 215; *Perkins v. Ohio Dept. of Transp.* (1989), 65 Ohio App.3d 487, 584 N.E.2d 794. Such terms are obligatory when the word "shall" is used in the manual. When the term "should" is used, it is considered "advisable usage, recommended but not mandatory." *Perkins, supra,* at 494, 584 N.E.2d at 798.

■ In this case, nothing in the manual obligated ODOT to place the sign in question on the side of the road. For instance, several provisions of the manual are applicable herein. Section 7A–3 states that, since it is not possible to prescribe detailed standards for all situations, "minimum standards" are presented in the most common situations. It further states that each construction project should include provision for a reasonably specific traffic control plan which should include signing, surveillance and inspection.

Section 7B–5 provides that, as a general rule, signs shall be located on the right side of the road. But, where special emphasis is deemed necessary, dual installations may be made on both sides of the road.

Section 7C–5, which specifically involves road closed signs similar to the one in this case, states:

"One of these signs *shall* be used at the point where through traffic must detour to avoid a closing of the highway at a construction or maintenance project located beyond the point of detour. It *should* be erected *in the center of the roadway on a Type III barricade or, as an acceptable alternative, at the right of the roadway when the pavement is narrow.* * * *

"The Bridge Out Ahead sign (R–76B) may be used when applicable." (Emphasis added.)

The reasonable construction of these sections produces the following results. Under Section 7A–3, the promulgation of a traffic control plan is advisable but not obligatory. As to the "Bridge Out" signs in this case, defendant complied with the dictates of the manual. For, as the court found, the mandatory road closed sign was used in this case at the point where through traffic must detour. Under Section 7C–5, the more specific section, which prevails over the more general Section 7B–5, the placement of a sign on the side of the road is not obligatory, because the term "should" is used. Thus, it is acceptable under the manual for defendant to have placed the sign in the middle of the road. Hence, defendant cannot be liable as a matter of law by virtue of the manual.

Plaintiff also contends that the trial court erred by stating that compliance with the minimum standards set by the manual precludes liability. In this case, defendant promulgated a traffic control plan which determined that placement shall be on the side of the road due to the danger of placing it in the middle of the road. Defendant's witness, John Lilli, testified that he recommended a side-of-the-road placement and that his recommendation was incorporated into the plan. Further, the trial court found that the plan required such a side-of-the-road placement, but that defendant did not follow its plan.

In these circumstances, defendant can be held liable for negligently implementing its decision to place the sign on the side of the road. The obligatory terms of the manual are not the sole basis of defendant's negligence liability. See *Burns v. Ohio Dept. of Transp.* (1987), 39 Ohio App.3d 126, 529 N.E.2d 1283, motion to certify overruled (1988), case No. 87–1919; *Slavick, supra.* Moreover, contrary to defendant's position, sovereign immunity does not preclude liability in this case.

As defendant indicates, a government entity is immune from liability for acts or omissions involving the exercise of an executive or planning function concerning the making of a basic policy decision which is characterized by a high degree of official judgment or discretion. *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 284, 525 N.E.2d 808, 810; *Reynolds v. State* (1984),

14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. However, sovereign immunity does not provide protection for the negligent implementation of a decision. As the Supreme Court wrote in *Winwood, supra,* after an immunized discretionary or policy decision is made, " * * * steps such as the design, placement, repair and maintenance of traffic control devices constitute the mere implementation of a policy decision. Such implementation involves very little discretion or independent judgment, and is therefore not immune." *Id.,* 37 Ohio St.3d at 285, 525 N.E.2d at 811. Compare *Garland v. Ohio Dept. of Transp.* (1990), 48 Ohio St.3d 10, 548 N.E.2d 233, paragraph two of the syllabus.

█ Furthermore, the fact that the manual gave defendant a choice as to where to place the sign does not render defendant's actions herein immune. This court found in *Pottenger v. Ohio Dept. of Transp.* (Dec. 7, 1989), No. 88AP–832, unreported, 1989 WL 147998, that where defendant exercises its planning discretion to select one available reasonable option over another, the doctrine of discretionary immunity bars plaintiff's claim. *Id.* at 7. At any rate, plaintiff is not contesting defendant's selection of one option over another. Instead, plaintiff is challenging the implementation of defendant's decision.

█ In sum, the facts of this case show that defendant failed to comply with its own plan. Further, there was no evidence to prove that defendant exercised its engineering and policy judgment resulting in a change of the plan. See *CSX Transp., Inc. v. Pub. Util. Comm.* (1989), 64 Ohio App.3d 10, 580 N.E.2d 496. Given these circumstances, the trial court erred in finding that the manual precluded a finding that defendant was negligent; but such error was not prejudicial.

The third assignment of error is dispositive of this appeal as plaintiff has failed to prove an essential element of his claim: causation. The accident was not caused by the placement of the signs; it was caused, as indicated above, by York's actions. Hence, even if defendant failed to comply with its manual or its plan, plaintiff has no claim and is not prejudiced.

Plaintiff's first and second assignments of error are not well taken.

Pursuant to R.C. 2505.22, defendant has filed a cross-assignment of error in the interest of preventing reversal. See *Morgan v. Cincinnati* (1986), 25 Ohio St.3d 285, 25 OBR 337, 496 N.E.2d 468. Plaintiff has not moved to strike or otherwise objected to the filing of this cross-assignment of error. Defendant argues that two errors prevent reversal. First, defendant contends that the trial court should have granted an involuntary dismissal after the close of the plaintiff's case-in-chief. Second, defendant contends that the trial court's

finding that the sign was placed in the middle of the road is against the manifest weight of the evidence.

As to the involuntary dismissal argument, defendant maintains that plaintiff failed to provide expert testimony on the standard of engineering care in his case-in-chief. Although plaintiff provided an expert on the reconstruction of accidents, he did not have an engineer testify. Considering that defendant failed to comply with its plan, expert testimony was unnecessary on the facts of this case.

At any rate, there was some competent, credible evidence to support the trial court's determination that the sign was placed in the middle of the road. The testimony of defendant's witness, that he ordinarily complies with placement plans and thus must have placed the sign properly, was not persuasive to the trial court. Further, as the court noted, the argument that vandals moved the sign was not persuasive either. If this happened, then some neighbor or other person could have testified that they saw the sign at some time on the side of the road. There was also no evidence of such tampering with the sign. And the sign was large, heavy and difficult to move. Therefore, defendant's theory was not credible. Thus, there is some competent, credible evidence in the record to support the trial court's judgment. *C.E. Morris, supra.*

Defendant's cross-assignment of error is not well taken.

For the foregoing reasons, plaintiff's assignments of error and defendant's cross-assignment of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

Bowman and Ammer, JJ., concur.

William Ammer, J., of the Pickaway County Court of Common Pleas, sitting by assignment.