[Cite as *O'Brien v. Dept. of Transp.*, 2022-Ohio-1026.]

| | |
|---|---|
| SEAN O'BRIEN | Case No. 2015-00785JD |
| Plaintiff | Judge Dale A. Crawford<br>Magistrate Holly True Shaver |
| v. | |
| DEPARTMENT OF TRANSPORTATION | <u>DECISION</u> |
| Defendant | |

{¶1} Before the Court are Plaintiff's February 5, 2021 objections to the magistrate's December 21, 2020 decision recommending judgment in favor of Defendant. For the reasons stated below, the Court finds that the magistrate properly determined the facts and appropriately applied the law.

**Background**

{¶2} Plaintiff, Sean O'Brien, brought an action for negligence arising from an automobile collision that occurred on August 3, 2010 in Knox County, Ohio while he was a backseat passenger in Joseph Alexander's vehicle traveling southwest on State Route (SR) 95, a two-lane rural highway. The accident occurred at an intersection where SR 95, Mishey Road, and Old Mansfield Road meet (the intersection).

{¶3} Mishey Road runs east-west and intersects SR 95 from the east while Old Mansfield Road runs north-south and intersects Mishey Road from the south. Stop signs control traffic from both roads entering onto SR 95 while SR 95 is a through highway with a sharp curve. Southwest motorists, such as Alexander, must navigate a sharp curve to the right to stay on SR 95. If southwest motorists go straight through the curve, instead of following it, they will travel onto Old Mansfield Road. *See* Plaintiff's exhibit 42; Defendant's exhibits D, F, G, H and N.

{¶4} The posted speed limit on SR 95 was 55 mph. When traveling southwest on SR 95, motorists first encounter an intersection warning sign that shows Mishey Road

intersecting from the left and perpendicular to SR 95.  *See* Defendant's exhibits C and N.  Thereafter, two yellow, diamond-shaped horizontal alignment signs on both sides of SR 95 warned motorists of the impending curve; they depicted right-turn arrows below which were advisory speed limit signs stating 20 mph.  *See* Defendant's exhibits D, E and N.  A directional sign next advised motorists that Knox Lake, boat ramps, and a marina were straight ahead through the intersection on Old Mansfield Road.  *See* Defendant's exhibits F, G, and N.  Chevrons pointing to the right appeared ahead of the curve on the left-hand side of the road and continued through the curve.  *Id.*  In addition, two large, yellow arrow-boards faced motorists and pointed to the right.  *Id.*  A double-yellow line separated SR 95's two lanes and followed the curve to the right with a break at the intersection.  The solid white edge line on the right side of SR 95 followed the curve to the right with no breaks.

{¶5} On the day of the accident, Alexander drove approximately 40 mph straight through the intersection south onto Old Mansfield Road instead of following SR 95 as it sharply curved to the right.  His vehicle collided with another automobile, driven by Pamela Riggleman, traveling northeast on SR 95 as she attempted to turn onto Mishey Road.  Plaintiff was ejected from the vehicle and sustained major injuries.  Freddie Okulich, a disinterested and unbiased bystander, testified that, following the collision, Alexander was in hysterics and yelled "Look what I've done. I wasn't paying attention."  Additionally, Okulich testified that Alexander said he was going "too fast for the turn" and that he "forgot about the turn."

{¶6} Plaintiff claims that Defendant was negligent in its placement of traffic signage in advance of the intersection, causing Alexander to misunderstand the nature of the intersection.  Plaintiff contends Alexander's misunderstanding, induced by Defendant's negligence, ultimately led to the collision.  On October 17, 2016, the case proceeded to trial on the issue of liability before a magistrate of this Court.  At trial, both Plaintiff's traffic-engineering expert, Kimberly Nystrom, and Defendant's traffic-engineering expert, David

Holstein, testified that the 20-mph advisory speed limit was appropriate for the nature of the intersection. Additionally, the parties agreed that ODOT had no duty to redesign the intersection. Thus, Plaintiff's claims were solely based on ODOT's alleged failure to comply with the Ohio Manual of Uniform Traffic Control Devices (OMUTCD).

{¶7} Plaintiff presented multiple theories as to how Defendant's negligence was the proximate cause of his injuries. First, Plaintiff argues that Defendant's negligent placement of signs in advance of the intersection failed to properly warn Alexander that SR 95 southbound curved to the right, as opposed to continuing south onto Old Mansfield Road. Second, Plaintiff asserts that the topography of the road, including the hill that obscured the intersection, the slope of the roadway and the fact that Old Mansfield Road was visible in the distance, prevented Alexander from understanding that SR 95 curved to the right.

{¶8} Alexander recounted: "I came over the hill, and in my mind the road went straight, and I realized at some point that the road did curve and I knew I couldn't make the curve, so I went straight." Additionally, Officer Matthew Whims, the Ohio State Highway Patrolman that completed the traffic crash report for this collision, testified that there was no indication at the scene that Alexander attempted to make the curve, and stated that Alexander's driving contributed to the accident. Furthermore, Henry Lipian, Plaintiff's accident reconstructionist, conceded that, if Alexander intended to follow the curve, he was driving too fast to navigate that condition of roadway; however, he would have been able to observe that the route he was traveling on curved to the right if he had reduced his speed to the advisory speed.

{¶9} Following the trial, the magistrate recommended judgment in favor of Defendant. Plaintiff timely filed objections to the magistrate's September 1, 2017 decision recommending judgment in favor of Defendant, which this Court overruled and entered judgment in favor of Defendant. Thereafter, Plaintiff filed a timely appeal. The Tenth District Court of Appeals reversed the judgment and remanded the case for further

proceedings after finding that the magistrate had erred by limiting the testimony of Plaintiff's expert in human factors, William Vigilante, Ph.D.

{¶10} On October 22, 2019, the magistrate heard the complete testimony of Dr. Vigilante.  Vigilante opined that Alexander bore no responsibility for the accident because the accident was caused by ODOT's failure to provide adequate positive guidance and remove misleading guidance.  However, he also agreed that if Alexander had slowed his speed to the posted advisory speed at the hillcrest, then he would have been able to successfully navigate the intersection.

{¶11} Following the second trial, the magistrate recommended judgment in favor of Defendant after finding that Defendant did not violate the OMUTCD.  Additionally, the magistrate found that the signage in place on the day of the accident adequately warned Alexander of the curve in SR 95 and was not the proximate cause of the accident.  Plaintiff timely filed objections to the magistrate's December 21, 2020 decision.

**Scope of Remand**

{¶12} As a preliminary matter, Defendant argues that Plaintiff is not entitled to a new ruling on the objections previously raised and ruled on after the first trial because the scope of the remand was limited to hearing Plaintiff's human factors expert witness "express his opinion as to whether or not the signs along the road where this accident took place caused the driver to make a mistake * * *."  *See* Defendant's March 12, 2021 Reply to Plaintiff's Objections, p. 1.  Additionally, Defendant asserts the Court of Appeals set forth findings in its February 28, 2019 decision based on the evidence presented at the first trial which should now be considered the "law of the case".  *See id.* at p. 6.  Specifically, Defendant contends that "Plaintiff's own accident reconstructionist admitted Plaintiff's driver was negligent in going too fast for the curve – a finding of the Court of Appeals which is now the *law of the case.*"  *Id.*  Upon review, the Court disagrees.

{¶13} The doctrine of "the law of the case" functions to compel trial courts to follow the reviewing court's decisions "on the legal questions involved for all subsequent

proceedings in the case." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.3d 234 (1984). Accordingly, "where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Id.* Although the rule is considered "necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution", "[t]he doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Id.*

{¶14} When remanding the case for further proceedings, the Tenth District Court of Appeals stated, in relevant part:

> [W]e reverse and remand this matter to allow [Sean] O'Brien to present expert human factors testimony as to causation; that is, whether the signage ODOT installed for the intersection caused the driver of the vehicle in which O'Brien was a passenger to make the mistake that resulted in the collision and O'Brien's ensuing injuries.

*O'Brien v. ODOT*, 10th Dist. Franklin No. 18AP-231, 2019-Ohio-724, ¶ 1. Specifically, the Court of Appeals was "persuaded that Dr. Vigilante's testimony about human factors, including but not limited to working memory, long-term memory, positive guidance and perception/reaction time, was relevant to the issue of causation in this matter." *Id.* at ¶ 65. Moreover, the Court of Appeals observed that:

> [A]lthough the magistrate's decision contains a summary of Dr. Vigilante's testimony, her earlier representation that she would give Dr. Vigilante's testimony the weight that, in her opinion, it deserved, was hampered by her earlier decisions limiting the admissibility of much of his testimony. In short, the evidence the magistrate needed to properly consider the application of

the law to the evidence before her was inadequate for the claims of this action.

*Id.* at ¶ 46.

{¶15} This Court has no intention of extending the scope of remand. *See Nolan* at 4 ("the trial court is without authority to extend or vary the mandate given" by the reviewing court). However, the Court finds that the Court of Appeals neither limited Plaintiff's right to file objections nor set forth any findings by which this Court would be bound in ruling on Plaintiff's objections. Although the Court of Appeals remanded this case solely because the magistrate erred when limiting Dr. Vigilante's testimony, it is clear that the intention behind hearing the additional testimony was to view it together with all of the evidence presented in order to fully evaluate the issue of causation. Had this case been originally tried before a jury, on remand the entire case would have been retried to a new jury. Although this proceeding was a bench trial and the parties agreed it was only necessary to hear one witness at the retrial,[1] Defendant's liability cannot be adequately assessed without weighing the totality of the evidence presented at both trials.

{¶16} Because the magistrate's September 1, 2017 decision determined the issue of liability without the totality of the evidence, the Court's March 6, 2018 decision ruling on Plaintiff's September 14, 2017 objections to said decision is moot. Accordingly, the Court will conduct an independent review as to all the objected matters contained in Plaintiff's February 5, 2021 objections to the magistrate's December 21, 2020 decision and recommendation. *See* Civ.R. 53(D)(4)(d).

**Discussion**

{¶17} A magistrate's decision "is not effective unless adopted by the court."

---

[1] Upon remand, Magistrate Shaver held a status conference with the parties. *See* April 22, 2019 Order of the Magistrate. Plaintiff never requested an alternative magistrate be assigned to the case and the parties agreed that Dr. William Vigilante would be the only witness at trial. *See* September 27, 2019 Order of the Magistrate; *see also* May 17, 2019 Order of the Magistrate.

Civ.R. 53(D)(4)(a). Civ.R. 53(D)(4)(b) provides that, "[w]hether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification." However, when a party files objections to a magistrate's decision, the court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues, and appropriately applied the law." Civ.R. 53(D)(4)(d). In reviewing the objections, the court does not act as an appellate court but rather conducts "a de novo review of the facts and conclusions in the magistrate's decision." *Ramsey v. Ramsey*, 10th Dist. Franklin No. 13AP-840, 2014-Ohio-1921, ¶ 17 (internal citations omitted).

{¶18} In total, Plaintiff makes over fifty objections to the magistrate's decision, which are summated into nine arguments. Plaintiff contends that the magistrate erred when she: (1) made her findings of fact; (2) did not conduct a site visit; (3) did not allow evidence that the intersection has a reputation of being unsafe; (4) did not allow evidence regarding Defendant's post-accident installation of Advanced Route Turn Assemblies and how the use of these signs reduced the number of crashes at the intersection; (5) ignored evidence regarding the science of human factors; (6) held that Defendant was not negligent per se for its failure to place signs in the manner mandated by the OMUTCD; (7) held that Defendant was not negligent for the manner in which it signed and striped the intersection; and (8) made her conclusions of law. Lastly, Plaintiff attacks the magistrate's decision as a whole, claiming it is against the manifest weight of the evidence.

*Objections to Evidentiary Issues*

{¶19} Plaintiff's first five objections take issue with the magistrate's handling of the evidence in this case. The Court will first address Plaintiff's general assertion that "the magistrate erred in her findings of fact, omitting many salient facts, and stating others

inaccurately". As an initial matter, the magistrate neither made nor was required to make separate "findings of fact" in her decision. *See* Civ.R. 52. Rather, the magistrate offered a summary of the facts presented at both trials and referenced evidence she found credible and persuasive in her analysis of the legal issues. Although Plaintiff has a right to have the magistrate "state her findings of fact found separate from the conclusions of law", he failed to make the required written request for her to do so. *See id.*

{¶20} Furthermore, objections "shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). Although Plaintiff's objection includes fourteen subparts identifying individual issues with the magistrate's summation of the facts, these subparts are largely one sentence statements—or, in some cases, sentence fragments—for which plaintiff offers little argument or explanation. In the Court's view, the requirements of specificity and particularity call for more than unadorned disagreements and Plaintiff's burden requires some explanation regarding the relevancy and materiality of the matters to which he objects.

{¶21} Additionally, the scant nature of these subpart objections makes their basis unclear. In some instances, Plaintiff merely contends error with the magistrate's subjective description of certain facts and her use of punctuation without any reference to the transcript or any other specific basis. In other instances, Plaintiff takes issue with the magistrate's failure to include specific facts in her decision. However, the magistrate, as the trier of fact in a bench trial, is free to rely on the facts she deems most relevant and material to the issues at hand and free to disregard some evidence and rely on other evidence, in part, in whole, or any deviation in between. *See Siegel v. State*, 28 N.E.3d 612, 2015-Ohio-441, ¶ 12 (10th Dist.) (Any "suggestion that a magistrate * * * is incapable of deciding the facts and weighing the credibility of witnesses, lacks merit."). Additionally, the magistrate is not required to state in her decision every single fact on which her findings are based. *See* Civ.R. 52 ("When questions of fact are tried by the court without a jury, judgment may be general * * *."); *see also In re J.C.F*, 11th Dist. Trumball No.

2020-T-0084, 2021-Ohio-1057, ¶ 25 ("the magistrate was not required to list every finding on which his decision was based."). For these reasons, Plaintiff's objection, and its fourteen subparts, fails.

**{¶22}** Next, Plaintiff asserts that the magistrate erred when she did not conduct a site visit. Although the Court, in its discretion, may allow a site visit where proper, Plaintiff is not entitled to such a request. *See* R.C. 2315.02, 2315.08. While Plaintiff contends that the intersection is unusually dangerous, the Court finds that photographs and video of the roadway made a site visit unnecessary. Moreover, Plaintiff offers no argument whatsoever in support of this objection and, therefore, it fails for lack of specificity. *See* Civ.R. 53(D)(3)(b)(ii). In the little context Plaintiff does provide, he states that the magistrate's denial of his motion to conduct a site visit was an error. However, Plaintiff needed to seek to set aside the magistrate's ruling on said motion within ten days of its filing. *See* Civ.R. 52(D)(2)(b). Consequently, the Court finds no error in the magistrate's decision.

**{¶23}** Plaintiff also contends that the magistrate erred when she did not allow evidence that the intersection has a reputation of being unsafe. The Court disagrees. At the first trial, the magistrate sustained Defendant's objection to questions posed to two witnesses, Ruth Auker and Allison Lowry, regarding the road's reputation. Testimony of the road's reputation would be the opinions of lay witnesses. The Court may only allow opinion testimony from a lay witness when it is "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue". Evid.R. 701. There is nothing in the record suggesting the proposed testimony met either of these requirements. Indeed, testimony of both witnesses would, in large degree, rely on inadmissible hearsay, i.e. what others have said about the road. *See* Evid.R. 801(C), 802, and 803. Additionally, the Court finds the relevancy of such testimony questionable. *See* Evid.R. 401 and 403(A). The road's reputation has no bearing on whether Defendant complied with its legal duties regarding

the proper placement of signs at the intersection. As such, any probative value of the evidence is substantially outweighed by the danger or unfair prejudice and confusion of the issues. Consequently, the Court finds no error in the magistrate's decision.

{¶24} Next, Plaintiff argues that the magistrate erred when she did not allow evidence regarding Defendant's post-accident installation of Advanced Route Turn Assemblies (ARTAs). The magistrate sustained Defendant's objection to two questions posed to two witnesses, Ruth Auker and Jim Singrey, regarding the presence of ARTAs at the intersection following the accident. Such evidence of a subsequent remedial measure is inadmissible to prove negligence or culpable conduct. *See* Evid.R. 407.

{¶25} However, Plaintiff asserts that, although a subsequent remedial measure, this evidence should be admissible to establish causation. Although Evid.R. 407 permits evidence of a subsequent remedial measure for such limited purposes, the Court disagrees with Plaintiff's assertion that Singrey's testimony regarding the decreased number of incidents at the intersection with the ARTAs present is "obvious evidence of causation." Upon a de novo review, Singrey's testimony that the ARTA being installed at the intersection "seemed to really take care of a lot of the issues that happened there" is tenuous at best. Furthermore, such testimony is the opinion of a lay person. Although Singrey's testimony appears to be rationally based on his own perceptions, the tenuous nature of such post-accident perceptions is not helpful to the determination of causation because the installation of an ARTA was not mandatory at the time of the accident. Consequently, the Court finds no error with the magistrate's initial exclusion of such evidence.

{¶26} Additionally, Plaintiff contends that this evidence should have been allowed to impeach Holstein's testimony that the use of an ARTA at the intersection would be "inappropriate" at the intersection. Having reviewed Holstein's testimony, the Court finds that evidence of post-accident installation of an ARTA does not impeach Holstein's testimony. Holstein very clearly testified that the OMUTCD did not require the installation

of an ARTA at the accident location *at the time of the accident.* As the magistrate correctly stated on the record, "[b]ut the fact that it's up now does not necessarily mean that it was a mandatory sign at [the time of the accident]." Thus, the Court agrees with the magistrate's exclusion of evidence of subsequent remedial measures.

{¶27} Lastly, Plaintiff argues that the magistrate erred when she ignored evidence regarding the science of human factors. Within the objection, plaintiff asserts five more specific objections relative to evidence plaintiff presented or proffered about human factors. In the first two subpart objections, Plaintiff argues the magistrate ignored evidence regarding the concept of perception reaction time and working memory. As previously discussed, the magistrate is not required to state in her decision every single fact on which her findings are based. Furthermore, the magistrate did not omit a discussion of either of these concepts in her decision. The fact that Plaintiff disagrees with the magistrate's assessment of their credibility or persuasiveness does not mean she ignored evidence. From the Court's review, the magistrate listened to all the relevant evidence and did not misapprehend any of the facts when she set them forth in her decision.

{¶28} In the third, fourth, and fifth subpart objections, Plaintiff contends the magistrate erred in excluding evidence of positive guidance, telephone poles, and Dr. Vigilante's opinion that Defendant failed to provide appropriate guidance. Upon independent review, the magistrate neither excluded nor limited Dr. Vigilante's testimony regarding these concepts during the second trial. Consequently, Plaintiff's objection, and its five subparts, fails.

{¶29} For the reasons stated above, Plaintiff's first five objections, including their subparts, are OVERRULED.

*Objections to Substantive Issues*

{¶30} Plaintiff's last four objections take issue with the magistrate's negligence analysis. It is well settled that the Ohio Department of Transportation (ODOT) is liable for

accidents that are proximately caused by its failure to conform to the requirements of the OMUTCD. *Pierce v. Ohio Dept. of Transp.*, 23 Ohio App.3d 124, 491 N.E.2d 729 (10th Dist.1985); *see also Lumbermens Mut. Cas. Co. v. Ohio Dept. of Transp.*, 49 Ohio App.3d 129 (10th Dist.1988). The scope of ODOT's liability is determined by whether the OMUTCD prescribes a mandatory duty or a discretionary act. *Gregory v. Ohio Dept. of Transp.,* 107 Ohio App.3d 30, 33-34, 667 N.E.2d 1009 (10th Dist.1995). ODOT may be rendered negligent *per se* when it deviates from the mandatory provisions of the OMUTCD. *Leskovac v. Ohio Dept. of Transp.*, 71 Ohio App.3d 22, 27-28, 593 N.E.2d 9 (10th Dist.1990), citing *Perkins v. Ohio Dept. of Transp.*, 65 Ohio App.3d 487, 584 N.E.2d 794 (10th Dist.1989). Alternatively, "ODOT is immune from liability for damages resulting from not performing a discretionary act." *Gregory* at 33-34, citing *Winwood v. Dayton*, 37 Ohio St.3d 282, 525 N.E.2d 808 (1988). To differentiate, the OMUTCD will: use the term "shall" to prescribe a mandatory duty; use the term "should" to indicate a "recommended, but not mandatory, practice in typical situations, with deviations allowed if engineering judgment or engineering study indicates the deviation to be appropriate"; or use the term "may" to indicate a permissive, optional condition that "carries no requirement or recommendation." *Ohio Manual of Uniform Traffic Control Devices*, Introduction 2 (2005 Ed.Rev.1).

{¶31} First, Plaintiff asserts that the magistrate erred when she held that Defendant was not negligent per se for its failure to place signs in the manner mandated by the OMUTCD. Within this objection, Plaintiff makes several specific assertions. Plaintiff argues that Defendant failed to comply with mandatory requirements regarding the placement of the optional one-direction large arrow signs (W1-6) and the chevron alignment signs (W1-8). Plaintiff then argues that Defendant failed to comply with mandatory requirements when it did not place a route sign assembly, a junction assembly, an advance route turn assembly (ARTA), and a directional assembly.

{¶32} As to the W1-6 signs, Section 2C.09 of the OMUTCD provides that, "[i]f used, the One-Direction Large Arrow sign shall be installed on the outside of a turn or curve in line with and at approximately a right angle to approaching traffic." Plaintiff relies on the testimony of his traffic-engineer expert, Nystrom, who testified that the left-most sign is not posted on the outside of the turn and is not at a right angle to approaching traffic. Plaintiff's only criticism of the right-most sign is that it is not in "alignment with approaching traffic." Upon review, the Court disagrees with Nystrom's assessment.

{¶33} Motorists traveling southwest on SR 95 must navigate the curve to the right. *See* Defendant's exhibits A, D, G, H and N; Plaintiff's exhibit 42. The Court finds that both large arrow signs appear on the outside of this curve, i.e. outside the shoulder of the oncoming lane on the long side of the curve. *See* Defendant's exhibits D and N; Plaintiff's exhibit 42. In contrast, the inside of the curve and outside the shoulder of the lane traveling southwest on the curve's short side, contains no signs. *Id.* Indeed, the OMUTCD does not require that the W1-6 signs be placed at the apex of the outside curve, only that they be placed "outside of a turn or curve." The Court also finds both large arrow boards face traffic traveling southwest on SR 95 are clearly visible and are placed, as required, at "approximately" a right angle to oncoming traffic. Therefore, the Court finds no error with the magistrate's conclusion that the W1-6 signs' placement complied with the OMUTCD.

{¶34} As to the W1-8 signs, Section 2C.10 of the OMUTCD provides that, "[i]f used, Chevron Alignment signs shall be installed on the outside of a turn or curve, in line with and at approximately a right angle to approaching traffic." Plaintiff, again relying on Nystrom's testimony, contends that the chevrons are not in line with and at a right angle to approaching traffic. However, the exhibits show the chevrons clearly visible facing traffic, in line with and at an approximate right angle to oncoming traffic. *See* Defendant's exhibits D, G, H, and N; Plaintiff's exhibit 42. Consequently, the Court agrees with the

magistrate's conclusion that the W1-8 signs' placement complied with the mandatory provisions of the OMUTCD.

{¶35} As to the route sign assembly and junction assembly signs, Sections 2D.27 and 2D.28 of the OMUTCD state these assemblies "shall" be used only when "numbered routes" intersect. The term "numbered route" is not defined in the OMUTCD. As such, both parties presented testimony of their traffic-engineering experts as to what constitutes a numbered route. Nystrom testified that numbered routes include "county routes" but she includes no explanation for this conclusion. However, Holstein testified that numbered routes include only interstates, U.S. routes, and state routes. Holstein further testified that county roads would be considered numbered routes "only in very odd situations, if they're a very major road."

{¶36} When specifically asked whether a county road is considered a numbered route under the OMUTCD, Holstein testified:

> No. If you look at the examples, every one of the signs in here, and I'm referring to figure 2D-6, all three pages, every sign on there is a U.S. or state route. Mishey Road may have a local number, apparently County Road 55, but it's a very minor road. So the purpose of this type of signing, we would only consider if a county road was a very major road.

The magistrate found Holstein's testimony credible and persuasive, a finding with which the Court agrees.

{¶37} Although the trial court must "independently assess the evidence and reach its own conclusions", it may "appropriately give weight to the magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence". *Siegel v. State*, 28 N.E.3d 612, 2015-Ohio-441, ¶ 12 (10th Dist.) (internal citations omitted). Holstein provides an explanation for his opinion whereas Nystrom's opinion is conclusory. Further, the Court finds Holstein more credible than Nystrom based on the differences in their background and experience. This is the first case in which Nystrom has testified in

Ohio and the first case in which she has interpreted the OMUTCD. Though she worked for Caltrans, the California equivalent of ODOT, she testified that California did not finalize its version of the MUTCD until after she left Caltran's employ. In contrast, Holstein has been responsible for administering the OMUTCD for almost two decades and has been responsible for hundreds of sign projects in Ohio. Therefore, the Court agrees with the magistrate's determination that "Mishey Road and Old Mansfield Road were not 'other numbered routes' as contemplated in the manual" and, therefore, that Sections 2D.27 and 2D.28 did not apply to the intersection.

{¶38} As to the ARTA, Section 2D.29 of the OMUTCD provides that "it shall be installed in advance of an intersection where a turn must be made to remain on the indicated route." The Court agrees with the magistrate's determination that "the photographs and video of the roadway clearly show that to remain on SR 95 southbound, a motorist would follow the curve in the roadway to the right. Although it is a sharp curve * * * no 'turn' must be made to remain on the indicated route as stated in Section 2D.29 of the OMUTCD." This conclusion is buttressed by Holstein who testified that an ARTA is only required where a motorist must turn onto a different road or change roads to stay on the same route.

{¶39} Despite photographs and video visibly showing SR 95 curving to the right, Plaintiff contends that the magistrate erred because the OMUTCD considers this intersection a "turn" as opposed to a "curve" since the advisory speed limit is 20 mph. The Court finds this assertion lacks merit. Although Table 2C-5 in Section 2C.06 of the OMUTCD suggests that a W1-1 turn sign should be used when there is one horizontal alignment change and the advisory speed limit is less than 30 mph, there is also a note attached to this example which explains that "[e]ngineering judgment should be used to determine whether the Turn or Curve sign should be used." *Ohio Manual of Uniform Traffic Control Devices*, 2C-7 (2005 Ed.Rev.1). If, based upon the use of engineering judgment, either a turn sign or curve sign could be deemed appropriate for intersections

with one horizontal alignment change and an advisory speed limit below 30 mph, then the 20-mph advisory speed limit employed at the intersection on SR 95 is not dispositive as to whether one must make a turn to remain on the same route for purposes of installing an ARTA. Here, SR 95 clearly curves to the right and a motorist does not have to change roads to stay on SR 95. Consequently, the Court finds no error with the magistrate's determination.

{¶40} As to the directional assembly, Plaintiff does not highlight any language requiring Defendant to install these signs at the intersection. Section 2D.30 of the OMUTCD provides that a directional assembly "shall" be used under specific circumstances when numbered routes begin, end, turn, or are intersected, all of which are indicated in advance by an ARTA or a junction assembly. *See Ohio Manual of Uniform Traffic Control Devices*, 2D-13 (2005 Ed.Rev.1). Upon review, the Court finds no language which imposes a mandatory duty on Defendant with respect to the intersection.

{¶41} Consequently, the Court finds the magistrate did not err when she concluded that Plaintiff failed to prove by a preponderance of the evidence that Defendant breached any mandatory duty as set forth in the OMUTCD because Defendant neither failed to comply with mandatory requirements when it placed the W1-6 and W1-8 signs nor violated any mandatory requirements when it omitted from the intersection placement of a route sign assembly, junction assembly, ARTA, and directional assembly.

{¶42} Second, Plaintiff asserts that the magistrate erred when she held that Defendant was not negligent for the manner in which it signed and striped the intersection. Within this objection, Plaintiff makes several specific assertions. Plaintiff argues that Defendant was negligent when it installed the separate W2-2 intersection warning and W1-1 turn signs instead of a W1-10 combination horizontal alignment/intersection sign, and when it incorrectly spaced the W1-1 turn and W1-8 chevron alignment signs. Plaintiff

also argues that Defendant was negligent when it failed to use "barrier striping" on the road at the intersection.

{¶43} As to the W1-10 sign, Plaintiff acknowledges that Defendant was not required to place this sign.  Plaintiff also acknowledges that the W1-1 and W2-2 signs Defendant did place at the intersection were optional.  Nevertheless, Plaintiff argues Defendant is liable for its "negligent implementation of a decision" when Defendant chose to place the optional W1-1 and W2-2 signs instead of placing a W1-10.  *See Rhodus v. Ohio Dept. of Transp.*, 67 Ohio App.3d 723, 739, 588 N.E.2d 864 (10th Dist.1990).  Although the mandatory terms of the OMUTCD are not the sole basis of ODOT's negligence, ODOT cannot be held liable for exercising discretion in its executive planning function.  *See id.* at 731 (The Court found that, after exercising discretion in developing a traffic control plan which required a barricade be placed on the side of the road due to the danger of placing it in the middle of the road, ODOT was not immune for its decision to place a barricade in the middle of the road); *see also Burns v. Ohio Dept. of Transp.*, 39 Ohio App.3d 126, 529 N.E.2d 1283 (The Court found that the decision to expand a state route into a four-lane highway was a discretionary decision, but the design and construction of said highway was a ministerial function for which the state was not immune).  Moreover, where the state "exercises its planning discretion to select one available reasonable option over another, the doctrine of immunity bars plaintiff's claims." *Rhodus* at 732, citing *Pottenger v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 88AP-832, 1989 WL 147998, *7 (Dec. 7, 1989).  While the Court may agree that the W1-10 sign better depicted the conditions of the intersection, that is not the law applicable to this case.  Indeed, Defendant's decision to install the optional W1-1 and W2-2 signs rather than the optional W1-10 sign was a discretionary act for which the state is immune.

{¶44} As to Plaintiff's criticism of the W1-1 and W1-8 signs' spacing, Section 2C.05 and 2C.10, including Table 2C-4, of the OMUTCD merely provide guidance as to spacing of these signs.  While the sole fact that OMUTCD gives ODOT a choice regarding sign

spacing is not dispositive of the state's immunity, Plaintiff has not provided sufficient evidence that Defendant did not properly execute its plan after using its discretion to determine spacing of these signs. *See Rhodus* at 732 (the facts demonstrated that ODOT failed to comply with its own plan as to the installation of a barricade); *see also* Defendant's exhibit K. Additionally, there is insufficient evidence to conclude that any employee or agent of ODOT was negligent when placing the W1-1 and W1-8 signs. *See Burns* at 128 (Plaintiff provided sufficient evidence that, despite knowledge of an issue with rockslides causing accidents in the area and access to technology and devices to prevent the problem, ODOT had a highway constructed without any preventive measures). Moreover, the Court finds that the photograph and video evidence establish that the signs were placed such that Alexander had adequate time to react to the change in alignment. *See* Defendant's exhibits A, C, D, E, F, G, H, I and N; Plaintiff's exhibits 42, 5. Therefore, the Court finds no issue with the magistrate's conclusion.

**{¶45}** As to the striping of SR 95, Plaintiff does not highlight any language that imposed a duty on Defendant with which it did not comply. Upon review, the Court can find no OMUTCD provision, optional or otherwise, in regards to pavement markings with which Defendant has failed to comply. Furthermore, the Court finds that photograph evidence demonstrates that the pavement markings on the road at the time of the accident convey to a reasonable, southbound driver that SR 95 curves to the right. *See* Defendant's exhibits A, C, D, E, F, G, H, I and N; Plaintiff's exhibits 42, 5. Furthermore, the breaks in the pavement markings at the intersection provide adequate guidance to a reasonable, southbound driver that he may travel onto either Mishey Road or Old Mansfield Road if that is his intended route of travel. *Id.*

**{¶46}** Even if the magistrate had erred in concluding either that Defendant neither owed Plaintiff a duty nor breached any duty owed to Plaintiff for the manner in which Defendant signed and striped SR 95, there was no prejudice to Plaintiff because Defendant's actions or omissions did not proximately cause Plaintiff's injuries. Indeed,

when ODOT fails to comply with the OMUTCD, it is only "liable in damages if proximate causation is established." *Leskovac*, 71 Ohio App.3d at 27-28, 593 N.E.2d 9. In order to establish proximate cause, Plaintiff had the burden to present evidence upon which the Court could reasonably determine that it was more likely than not that Defendant's failure to appropriately sign and stripe SR 95 at the intersection, in a natural and continuous sequence, produced Alexander's inability to safely navigate SR 95 and that would not have taken place had Defendant placed the proper signs and pavement markings. *See Whiting v. Dept. of Mental Health*, 141 Ohio App.3d 198, 202-203, 740 N.E.2d 644 (10th Dist.2001).

{¶47} Upon a de novo review, the Court agrees with the magistrate's finding that "Plaintiff failed to prove that ODOT's signage was the proximate cause of the accident." Additionally, the Court agrees with the magistrate's finding that the optional "signage in place at the intersection, as well as the 20-mph advisory signs and curved white edge line provided adequate positive guidance which would alert any reasonable driver of the need to slow down, proceed with caution, and expect to proceed right while slowing down." Although Plaintiff's objections do not specifically challenge the magistrate's finding that "plaintiff has failed to prove that any breach by ODOT was the proximate cause of his injuries", he expatiates that the magistrate failed to acknowledge the role human factors psychology played in preventing Alexander from understanding that SR 95 curved to the right at the intersection. The Court disagrees. As already explained, Plaintiff's assertion that the magistrate ignored evidence lacks merit. Specifically regarding the issue of causation, Plaintiff's argument requires the Court to find that Alexander was exercising reasonable care while driving, which is not supported by the evidence.

{¶48} Alexander did not testify that he was confused by or misunderstood any signs. Additionally, Alexander testified he was traveling "40-45 miles an hour" at the time of the accident, a speed which is double the advisory speed limit. Plaintiff attempts to attenuate this fact by framing Alexander as a well-seasoned, defensive driver with

experience at navigating rural roads. While this may typically be the case, Alexander admitted that, at the time of this accident, he was not paying attention and he was going too fast for the turn.

{¶49} Despite Alexander conceding to his own carelessness, Plaintiff insists Alexander was exercising reasonable care because he was driving well within the posted speed limit of 55 mph. Although the posted speed limit may have been 55 mph, the legal speed limit is whatever speed is reasonable under the circumstances. R.C. 4511.21(A) ("No person shall operate a motor vehicle * * * at a speed greater than is reasonable or proper, * * * and no person shall drive any motor vehicle * * * at a greater speed than will permit the person to bring it to a stop with an assured clear distance ahead."); *Stonerock v. Miller Bros. Paving*, 72 Ohio App.3d 123, 136, 594 N.E.2d 94 (10th Dist.1998) ("[T]he operation of a motor vehicle, even if being driven below the posted speed limit, may be unreasonable given the circumstances."); *State v. Wall*, 115 Ohio App. 323, 185 N.E.2d 115 (10th Dist.1962) (The Court found that a posted speed limit merely constitutes "prima facie evidence to be considered along with the other evidence in the case in determining the ultimate question whether the speed is reasonable and proper."); *see also State v. Neff*, 41 Ohio St.2d 17, 322 N.E.2d 274 (1975). Upon review, the Court finds, and both traffic-engineering experts in this case agree, that the reasonable speed at which to operate a vehicle under the circumstances present at the intersection is 20 mph.

{¶50} Additionally, the Court is not persuaded by Plaintiff's assertion that the issue of proximate cause turns on the science of perception and memory, and not the speed at which Alexander was operating his vehicle. Experts in this case, including Plaintiff's, agreed that if Alexander heeded the advisory speed sign at the hillcrest and slowed his speed, then he would have been able to successfully navigate the curve. While the Court may have been persuaded that alternative signage should have been used to better illustrate the curve, Alexander failed to heed properly placed warning signs advising

motorists to observe a 20-mph speed for upcoming adverse conditions in the road—whether those adverse conditions required a turn or a continuous curve is immaterial.

{¶51} Simply put, Plaintiff did not present sufficient credible evidence to convince the Court that this accident would not have happened had Defendant placed the alternatively suggested signs and pavement markings. Therefore, the Court finds that Alexander's negligence in failing to operate his vehicle in a reasonable manner and navigate SR 95 was the sole proximate cause of the accident and Plaintiff's injuries. The signage in place on the day of the accident, which clearly indicated to drivers traveling southwest on SR 95 that the road curved sharply to the right, was not.

{¶52} Plaintiff also makes a general assertion that "the magistrate erred in her conclusions of law." Within this objection, Plaintiff makes twenty-one individual subpart objections. As already discussed, the magistrate was neither requested to nor did she make separate conclusions of law. *See* Civ.R. 52. Many of the subpart objections lack any specificity, without any reference to the transcript or any other specific basis, and are not material to the magistrate's decision. Additionally, these challenges merely rehash issues that the Court has already considered and rejected. For these reasons, Plaintiff's objection, and its subparts, fails.

{¶53} Lastly, Plaintiff claims that the magistrate's decision is against the manifest weight of the evidence. This objection simply summarizes arguments that Plaintiff has set forth more specifically in his other objections. Further, Plaintiff does not argue the appropriate standard of review for this juncture. While the manifest weight standard is applicable in civil cases, it is normally applied to appellate review of verdicts. However, the Court does not act as an appellate court when reviewing a magistrate's decision. Rather, as indicated above, the Court's duty is to conduct an independent, de novo review of the facts and conclusions in the magistrate's decision and determine whether the magistrate properly determined the facts and appropriately applied the law. After reviewing the entire record, the Court finds the magistrate did just that.

**{¶54}** Moreover, applying a manifest-weight standard does not change the result. Manifest weight challenges require the challenging party "to demonstrate that the evidence could lead to only one conclusion and that conclusion is contrary to judgment." *Galay v. ODOT*, 10th Dist. Franklin No. 05AP-383, 2006-Ohio-4113, ¶ 14. Where a judgment is supported by some competent, credible evidence, it is not against the manifest weight of the evidence. *Id.* Plaintiff fails to demonstrate that the evidence in the case could lead to only one conclusion. For the reasons recited throughout the present decision, the Court finds there is ample competent and credible evidence to support the magistrate's decision.

**{¶55}** For the reasons stated above, the Court finds that the magistrate appropriately applied the law, and OVERRULES Plaintiff's sixth, seventh, eighth, and ninth objections, including all subpart objections.

**Conclusion**

**{¶56}** Upon a de novo review, the Court finds that the magistrate properly determined the facts and appropriately applied the law. For the reasons stated above, the Court OVERRULES Plaintiff's February 5, 2021 objections and adopts the magistrate's December 21, 2020 decision as its own with modification to reflect the additional analysis stated herein.

DALE A. CRAWFORD
Judge

[Cite as *O'Brien v. Dept. of Transp.*, 2022-Ohio-1026.]

| | |
|---|---|
| SEAN O'BRIEN<br><br>    Plaintiff<br><br>    v.<br><br>DEPARTMENT OF TRANSPORTATION<br><br>    Defendant | Case No. 2015-00785JD<br><br>Judge Dale A. Crawford<br>Magistrate Holly True Shaver<br><br><u>JUDGMENT ENTRY</u> |

{¶57} Upon a de novo review, the Court finds that the magistrate properly determined the facts and appropriately applied the law. For the reasons stated, the Court OVERRULES Plaintiff's February 5, 2021 objections and adopts the magistrate's December 21, 2020 decision as its own with modification to reflect the additional analysis provided in this decision. Judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

DALE A. CRAWFORD
Judge

Filed February 16, 2022
Sent to S.C. Reporter 3/29/22